DECISION
{¶ 1} Relator, David Martin, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53, and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate determined that, because the commission failed to explain the impact of the psychological restrictions noted by Dr. Howard on relator's ability to perform some sustained remunerative employment, the commission's order failed to comply with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Accordingly, the magistrate recommended a writ be issued vacating the commission's prior order and requiring the commission to issue a new order, either granting or denying the requested compensation after discussing the effect of the psychological restrictions on relator's ability to perform some sustained remunerative employment.
 {¶ 3} The commission filed an objection to the magistrate's decision. The commission argues that: (1) Dr. Howard's reference to the claimant's "capabilities" does not equate to work-related "restrictions"; and (2) its order does address the psychological evaluation conducted by Dr. Howard. We disagree with both of these assertions.
 {¶ 4} Dr. Howard opined that relator is currently experiencing a 15 percent partial impairment due to his psychological condition and that he can perform at the simple to moderate task range and low to moderate stress range. In essence, this assessment constitutes a work-related restriction.
 {¶ 5} Furthermore, although the commission's order does reference Dr. Howard's report, it does not make any attempt to explain how the jobs identified were within relator's psychological restrictions. Therefore, the order fails to comply with Noll.
 {¶ 6} For these reasons, we overrule the commission's objection to the magistrate's decision. We adopt the findings of fact and conclusions of law contained in the magistrate's decision. Therefore, this court issues a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its prior order and to issue a new order, either granting or denying the requested compensation after explaining the effect of the psychological restrictions on relator's ability to perform some sustained remunerative employment.
Objection overruled; Writ of mandamus granted.
PETREE, P.J., and WRIGHT, J., concur.
WRIGHT, J., retired of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 7} Relator, David Martin, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to such compensation.
Findings of Fact:
 {¶ 8} 1. Relator has sustained three separate industrial injuries. In 1982, he sustained an injury to his left eye which has been allowed for the following conditions: "corneal laceration of left eye; glaucoma with ocular trauma, left." Relator was able to return to work following this injury. In 1990, relator injured his left knee and his claim has been allowed for: "sprain left knee and leg; tear meniscus." In 1994, relator sustained his third injury, which is the most significant, and his claim has been allowed for: "laceration right hand; acute paraspinal strain; lumbar disc displacement; depressive disorder."
 {¶ 9} 2. On November 21, 2000, relator filed an application for PTD compensation supported by the October 8, 2000 report of his treating physician Dr. James Lundeen. In his report, Dr. Lundeen made the following observations:
 {¶ 10} "* * * Physical limitations due to this injury or occupational disease: walking, sitting, standing, stairs, lifting, complete loss of vision left eye, limited left knee movements, limited neck movements, limited lower back movements. Locations of pain due to this injury or occupational disease: neck, arms, lower back, hips, legs. Locations of increased/decreased sensitivity: decreased in arms and legs. Adverse effects on sleep: frequent restless sleep due to discomfort from injuries sustained in this industrial accident. Activities which worsen symptoms: physical exertion, maintaining one posture or position for more than a few minutes. Activities/treatment which alleviate symptoms: rest, medication, back brace."
 {¶ 11} 3. Dr. Lundeen concluded as follows:
 {¶ 12} "On the basis of only the allowed condition(s), the medical history and all medical information available at this time, the findings on physical examination being both subjective and objective. It is my opinion that the claimant is permanently and totally disabled as a direct result of the injuries in this claim. There is no expectation of recovery from this injury. The nature and extent of injury is sufficient to permanently remove this person from the industrial workplace setting."
 {¶ 13} 4. Dr. Kathleen A. McGowan examined relator with regard to his left eye injury. She concluded that relator had reached maximum medical improvement, assessed a 24 percent whole person impairment due to his reduced visual acuity, pseudophakia, and visual field loss in his left eye.
 {¶ 14} 5. Dr. William Reynolds examined relator with regard to his allowed physical conditions and issued a report dated February 8, 2001. Dr. Reynolds concluded as follows:
 {¶ 15} "It is my opinion this injured worker has reached a level of MMI with regard to each of the allowed conditions. Using the AMA Guides, Fourth Edition[,] referrable [sic] to the laceration of the right hand, his impairment would be 0. Referrable [sic] to his lumbar strain and lumbar disc displacement, impairment would be in the range of 10%. Referrable [sic] to his left knee and meniscus tear, his impairment would be in the range of 3%. This would give him a PPI of function of the man as a whole in the range of 13%."
 {¶ 16} 6. Dr. Reynolds completed a physical strength rating form and indicated that relator was capable of performing work of a sedentary nature.
 {¶ 17} 7. A psychological evaluation was conducted by Lee Howard, Ph.D., who prepared a report dated February 6, 2001. Dr. Howard concluded that relator had reached maximum medical improvement based upon the following factors: relator is six years postinjury; has seen his current psychologist for three to four years with improvement; reports only intermittent as opposed to ongoing depression at a frequency of once a month and averaging one week; and relator is receiving financial support from non-working sources. Dr. Howard opined that relator is currently experiencing a 15 percent permanent partial impairment due to his psychological condition and that he can perform at the simple to moderate task range and low to moderate stress range without the inclusion of the physical allowance in his claim and in the presence of appropriate motivation. Dr. Howard also indicated that psychological intervention should continue for maintenance purposes only. Dr. Howard completed an occupational activity assessment wherein he concluded that, based upon the allowed psychological condition alone, relator could return to any of his former positions of employment and could likewise perform any sustained remunerative employment for which he was otherwise physically capable.
 {¶ 18} 8. An employability assessment was prepared by Brian L. Womer, MRC, CRC, who issued a report dated April 9, 2001. Pursuant to the report of Dr. Lundeen, Mr. Womer concluded that there were no jobs which relator could perform. However, based upon the reports of Drs. Reynolds, McGowan and Howard, Mr. Womer concluded that relator could perform the following jobs: "Security System Monitor," "Microfilm Doc. Preparer," "Patcher," "Wire Coater/Insulator," "Telephone Solicitor," "Hand Mounter," "Charge Account Clerk," and "Call Out Operator." Mr. Womer concluded that, as a person of middle age, relator's age may pose work adjustment issues in adjusting to new jobs and/or work settings, that his 12th grade education indicates reasonably developed academic skills required to perform entry-level occupations, and that his work history provided him with work temperaments including doing repetitive work and making judgments and decisions. However, Mr. Womer indicated that relator would not have acquired any significant work skills that would be transferable to lighter sedentary jobs and that relator would likely experience work adjustment issues. Mr. Womer did indicate that, based upon relator's work history and education, he could develop academic or other skills required to perform entry-level sedentary or light duty jobs.
 {¶ 19} 9. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on June 5, 2001, and resulted in an order denying the requested compensation. Based upon the report of Dr. McGowan and relator's prior ability to return to work after his eye injury, the SHO concluded that relator's allowed left eye conditions do not result in any specific work limitations. Based upon the repot of Dr. Reynolds, the SHO concluded that relator could perform sedentary work activity. Based upon the report of Dr. Howard, the SHO concluded that relator's allowed psychological condition would not prevent him from returning to work at any of his former positions of employment and otherwise leaves him capable of performing work at the simple to moderate task range and low to moderate stress range. In addressing the non-medical factors, the SHO stated as follows:
 {¶ 20} "The Staff Hearing Officer finds that the claimant's age might present him with some difficulty in adjusting to new work situations but that it does not pose an insurmountable barrier to his re-employment potential. Individuals of the claimant's age frequently continue to be productive in the workforce for years, and they have more than sufficient time to acquire new skills, at least through informal means such as short-term or on-the-job training, which could enhance their potential for re-employment.
 {¶ 21} "The Staff Hearing Officer finds the claimant's high school diploma to be a strong vocational asset regarding his potential for returning to work. The claimant indicates on the IC-2 Application that he can read, write, and do basic math, as would be expected of someone with a twelfth grade education, although he testified at hearing that he finds reading `tedious,' which is understandable in light of the industrial injury to his left eye. In addition, the claimant has successfully performed work in the past at the semi-skilled level of employment, as found by Mr. Womer in his 04/09/2001 vocational assessment report, which is persuasive in this regard. In the job history section of his Application, the claimant indicated that his work at the waste water treatment plant required him to read gauges and meters regularly and to fill out forms charting what he had read. The Staff Hearing Officer notes that in his specialist report dated 02/06/2001, Dr. Howard indicates that the claimant's general fund of knowledge was in the normal range and that Mr. Womer's 04/09/2001 vocational assessment report states that the claimant's educational level supports a finding that the claimant is capable of meeting the demands of entry level occupations. Based on all of these facts, the Staff Hearing Officer finds that the claimant possesses sufficient intellect and literacy skills to obtain and perform work activity consistent with the claim-related functional limitations identified by Drs. Reynolds and Howard.
 {¶ 22} "Finally, the Staff Hearing Officer finds that the claimant is currently vocationally qualified to obtain and perform employment activity within the injury-related limitations noted by Drs. Reynolds and Howard. The Staff Hearing Officer bases this finding in part on the 04/09/2001 vocational assessment report from Mr. Womer which lists examples of positions the requirements of which fall within the medical restrictions identified by the two Industrial Commission specialists and for which the claimant is qualified. In addition, the Staff Hearing Officer finds that when his age and level of education are considered, the claimant is capable of acquiring new skills, at least on an informal basis such as through short-term or on-the-job training, that could serve to widen the scope of employment options available to him. In this regard, the Staff Hearing Officer also relies on Mr. Womer's report, which indicates that the claimant is capable of developing skills required to perform entry-level sedentary jobs.
 {¶ 23} "Therefore, because the claimant has the residual functional capacity to perform sedentary work activity as described by Drs. Reynolds and Howard when only the impairment arising from the allowed conditions is considered, because the claimant is qualified by age, education, and intellect to obtain and perform work at that level, and because the claimant is qualified by age and education to pursue new skills which could enhance his potential for re-employment, at least on an informal basis, the Staff Hearing Officer finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Accordingly, the IC-2 Application filed 11/21/2000 is denied."
 {¶ 24} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 27} In this mandamus action, relator first takes issue with the report of Dr. Howard. Relator indicates that Dr. Howard indicated that relator could return to any of his former positions of employment. Relator contends that the commission's reliance upon Dr. Howard's report constitutes an abuse of discretion inasmuch as it ignores the obvious fact that relator was physically unable to return to his former position of employment due to the orthopedic allowances in his claim. Relator points to that portion of Dr. Howard's report wherein, in response to the question of what is relator's occupational activity capacity, Dr. Howard responded as follows: "The claimant can perform at the simple to moderate task range and low to moderate stress range."
 {¶ 28} Relator contends that the commission did not consider the psychological limitations placed upon him by Dr. Howard in determining that relator could perform sedentary employment such as those jobs listed by Mr. Womer in his vocational report.
 {¶ 29} Ordinarily, the psychological reports contained in the record describe certain symptoms which the claimant has and yet the doctor never indicates that those symptoms correspond with any specific limitations or restrictions. The doctor simply lists the symptoms and then indicates that the claimant can return to their former position of employment and that they can perform other sustained remunerative employment as well. This court has consistently agreed with the magistrates' decisions that "symptoms" do not necessarily equate with "restrictions."
 {¶ 30} However, the present cases differs from those cases because Dr. Howard did indicate that relator's occupational activity capacity was restricted to performing at the simple to moderate task range and low to moderate stress range. The commission did not address this issue and did not indicate whether any of the jobs which relator might be capable of performing from a physical standpoint would also meet this psychological restriction.
 {¶ 31} Because the commission did not discuss the psychological restrictions, it is this magistrate's decision that the commission's order fails to comply with Noll and this court should issue a writ of mandamus ordering the commission to vacate its prior order and to issue a new order, either granting or denying the requested compensation, after discussing the effect of the psychological restrictions on relator's ability to perform some sustained remunerative employment.