THE STATE EX REL. DOMJANCIC, APPELLEE AND CROSS-APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO; ITT GRINNELL
CORPORATION, APPELLANT AND CROSS-APPELLEE.

[Cite as *State ex rel. Domjancic v. Indus.
Comm.* (1994), 69 Ohio St.3d 693.]

(No. 93–1629—Submitted May 16, 1994—Decided July 27, 1994.)

694

*Weiner & Suit Co., L.P.A.,* and *Dale A. Nowak,* for appellee and cross-appellant.

*Schottenstein, Zox & Dunn, Robert D. Weisman* and *William J. Barath,* for appellant and cross-appellee.

*Per Curiam.* Three questions are presented: (1) Did the commission abuse its discretion by relying on Dr. Gonzalez's report? (2) Did the commission abuse its discretion in not considering Ruth's vocational evaluation? and (3) Does the order satisfy *Noll?* For the reasons to follow, we answer "no" to each question.

Claimant advances four challenges to Dr. Gonzalez's report, none of which has merit. Claimant initially claims that the order violates Evid.R. 703. R.C. 4123.10, however, specifically exempts the commission from formal rules of evidence. See, also, *State ex rel. Roberts v. Indus. Comm.* (1984), 10 Ohio St.3d 1, 10 OBR 1, 460 N.E.2d 251.

Claimant also alleges that the report is irreparably flawed because it is based on a misconception of claimant's former job duties. While the report is indeed marred in this respect, that flaw is not fatal. The only relevant inquiry in any permanent total disability determination is not claimant's ability to return to his former position, but is instead claimant's ability to do *any* sustained remunerative employment. Dr. Gonzalez's misimpression notwithstanding, he specifically stated elsewhere in his report that claimant could engage in sustained remunerative employment.

Claimant's third contention attempts to interject *res judicata* into this controversy. Under the caption "IMPRESSION," Dr. Gonzalez noted "[n]o evidence of a herniated disc L4–5 on the right." Claimant argues that because herniated discs L4 and L5 on the right were previously allowed in the claim, Dr. Gonzalez's statement was improper under *res judicata.* This argument, too, fails.

Dr. Gonzalez's report, at the outset, outlines *all* allowed conditions, substantiating his awareness of what the claimant's recognized conditions were. That the doctor, upon examination, found no evidence of a herniated disc, does not amount to a repudiation of the allowance. As the referee insightfully stated:

"Dr. Gonzalez was not required to merely parrot the allowed conditions as his medical findings. It was Dr. Gonzalez's duty to report his actual clinical findings.

Obviously, the doctrines of *res judicata* and *collateral estoppel* do not apply to limit what a doctor may find during his examination."

Finally, claimant asserts that the commission inherently rejected Dr. Gonzalez's report by ordering a later examination by Dr. Baroff. This action, per claimant, barred the commission from later relying on Dr. Gonzalez's report. This claim lacks merit as well.

The "implicit rejection" concept articulated in *State ex rel. Zamora v. Indus. Comm.* (1989), 45 Ohio St.3d 17, 543 N.E.2d 87, applies where the commission makes a finding that is necessarily premised on a rejection of a given doctor's conclusion. Once the commission has done so, it cannot revive that report as evidence supporting a later finding.

No finding or order arose between the dates of the Gonzalez and Baroff reports, distinguishing this case from *Zamora*. Equally important, the commission's prerogative to determine that further medical evidence is needed must not amount to a merit adjudication of other medical reports already in file. To so hold forces the commission to forgo obtaining further medical opinions if it desires to use previously submitted evidence as well. This, in turn, infringes on the commission's right under Ohio Adm.Code 4121–3–09(B)(3) to demand a medical exam of claimant "*at any point* in the processing of an application for benefits." (Emphasis added.)

In summary, the evidentiary flaws directed at Dr. Gonzalez's report lack persuasiveness. The commission's reliance on his report was not, therefore, an abuse of discretion.

The challenge by the employer, ITT, is directed at the commission's treatment of Ruth's vocational report. Because the commission enumerates not only the permanent total disability evidence relied on, but also that which was merely considered, the omission of Ruth's report from the list compels the conclusion that the report was not considered. Under these facts, however, no abuse of discretion has occurred.

The appellate court correctly held that *State ex rel. Cupp v. Indus. Comm.* (1991), 58 Ohio St.3d 129, 568 N.E.2d 1214, prohibits the commission from summarily ignoring vocational reports. However, because claimant did not submit Ruth's report until *after* his permanent total disability hearing, *State ex rel. Cordray v. Indus. Comm.* (1990), 54 Ohio St.3d 99, 561 N.E.2d 917, controls, and not *Cupp*.

*Cordray* reasoned that because Ohio Adm.Code 4121–3–09(C)(5) gave the commission the discretion to grant or deny additional time for hearing preparation, "the commission must also have the discretion to accept or reject evidence submitted thereafter." *Id.* at 101, 561 N.E.2d at 919. In *Cordray,* as here, this

discretion was not changed by the commission's decision to consider the report of its own specialist, which was also obtained after the hearing. We stressed that because Ohio Adm.Code 4121–3–09(B)(3) authorized the commission to order a medical examination *at any point* in processing the claim, the commission was always free to consider reports from its own medical staff.

Ohio Adm.Code 4121–3–09(C)(5) provides that "[a]t hearings with notice * * * the parties shall be *fully* prepared to fully present their respective positions * * *." (Emphasis added.) Claimant had fourteen months between his application and the hearing to obtain this evidence. Instead, claimant waited until ten days before the hearing before even submitting to an evaluation by Ruth. Any hardship caused by omission of this report is one of claimant's making. Accordingly, the commission did not abuse its discretion in failing to consider Ruth's report.

Turning to the final question, presented by ITT, we find that the "explanation" surrounding the permanent total disability denial is a recitation of factors that do not readily suggest work amenability. *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, recently held that a hodgepodge of observations directed at claimant's nonmedical factors did not constitute an adequate explanation. *Gay* accordingly negates ITT's objection to the appellate court's finding of *Noll* noncompliance.

*Noll* noncompliance presents two remedial options. The appellate court elected to return the cause for further consideration and amended order. Claimant presses for the other alternative—a writ ordering a permanent total disability award pursuant to *Gay*. We affirm the appellate court's disposition. Generally, in cases where *Gay* relief has been recommended, the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment. This case does not fit that profile. Cf. *State ex rel. Koonce v. Indus. Comm.* (1994), 69 Ohio St.3d 436, 633 N.E.2d 520.

Accordingly, we vacate the commission's order and return the cause to it for further consideration and amended order.

The portion of the appellate decision that ordered the commission to consider Ruth's report is reversed. The remainder of the judgment is affirmed.

> *Judgment reversed in part*
> *and affirmed in part.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK and PFEIFER, JJ., concur.

F.E. SWEENEY, J., dissents and would reverse on authority of *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666.