DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Cheryl Shaffer, filed this original action in mandamus, seeking a writ ordering the Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate determined that relator failed to establish that the medical examiner had failed to accept relator's allowed condition of "multiple sclerosis aggravated by trauma." However, the magistrate found an abuse of discretion in the commission's order denying relator's application based upon the medical report of Dr. Winkelman when he expressly refrained from providing a complete medical evaluation due to his admitted omission of his consideration of a significant physical impairment which could be related to the allowed condition, and one which he recommended be evaluated by an appropriate specialist. Based upon the commission's failure to secure a medical report that addresses all of the medical issues, the magistrate found their denial to be an abuse of discretion and recommended that this court issue a limited writ of mandamus ordering the commission to vacate its denial of relator's application, to obtain a complete medical evaluation of claimant's allowed conditions by appropriate specialists, to conduct a new hearing on relator's application and to issue a new order granting or denying permanent total disability compensation.
 {¶ 3} Respondents Industrial Commission of Ohio and Lake Hospital System, Inc., have filed objections to the decision of the magistrate continuing to argue that the magistrate erred in finding the medical evidence before the commission to be insufficient to support its denial. For the reasons stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following an independent review of the record, we find that the magistrate has properly determined the facts and applied the salient law to them. We therefore adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we grant a limited writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation, to obtain a complete medical evaluation of relator's allowed conditions by appropriate specialists, to conduct a new hearing on her application and to render a new order granting or denying that application.
Objections overruled; limited writ granted.
Bowman and Bryant, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Cheryl Shaffer, : Relator, : v. : No. 03AP-486 The Industrial Commission of Ohio : (REGULAR CALENDAR) and Lake Hospital System, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 31, 2003 Shapiro, Shapiro and Shapiro Co., L.P.A., Geoffrey J. Shapiro
and Leah B. Porter, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Jones, Carolin Funk, L.P.A., and Thomas M. Carolin, for respondent Lake Hospital System, Inc.
 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Cheryl Shaffer, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to grant the requested compensation.
Findings of Fact:
 {¶ 6} 1. In April 1990, Cheryl Shaffer ("claimant") sustained an industrial injury when she slipped and fell, resulting in sprains/strain of the neck, back, right arm, right shoulder, and right hip and leg.
 {¶ 7} 2. The claim was additionally allowed for an aggravation of multiple sclerosis caused by the trauma, following an appeal to the common pleas court.
 {¶ 8} 3. In May 2001, claimant applied for PTD compensation. Her application states that she obtained her bachelor's degree in 1990. Further, claimant stated that, although she could read and do math, she was unable to write legibly due to tremors.
 {¶ 9} 4. In August 2001, claimant was examined on behalf of the commission by Marc Winkelman, M.D. In his report, Dr. Winkelman identified the allowed conditions as follows: "Sprain neck, back, right arm and shoulder, right hip and leg, multiplesclerosis aggravated by trauma." (Emphasis added.) Dr. Winkelman reviewed the history of medical conditions and treatments:
* * * She is 46 years old. In 1990 she slipped and fell at work. She hurt the entire right side of her body, including her neck, shoulder, arm and leg. She was treated with physical therapy and pain medicines. A few weeks later she developed a tremor in both upper limbs, fatigue, weakness, urinary frequency, falling, and dropping things. She saw many doctors, and finally Dr. Bauer, in December 1992. MRI showed abnormal signal in the internal capsule, corona radiata bilaterally, and subcortical white matter of the right frontal and parietal lobes. In a note dated October 17, 2000, Dr. Tucker quotes a 1993 note by Dr. Bauer, that "the spinal fluid was negative". Dr. Bauer made a diagnosis of multiple sclerosis. He treated her with parenteral steroids once and several courses of oral steroids. He prescribed Betaseron, but side effects caused the claimant to discontinue it. Presently he treats her with oral Methotrexate, Amantadine and Triavil. A note dated March 8, 1999, by Dr. Sweeney, comments that a 1997 MRI showed "disease progression and an increase in the lesion load".
She has been depressed since her accident, and that is why Dr. Bauer treats her with Triavil but there was no psychiatric history before her accident. There is no family history of neurologic disease. She denied alcohol and drug abuse.
After describing claimant's former work and present activities, Dr. Winkelman noted that claimant's chief complaint was trembling of her arms, spasms of her legs, frequent urination, tunnel vision and seeing spots. He described his clinical findings and impressions as follows:
Neurologic examination: She scored 27/30 on the Mini-Mental state examination. There was no dysarthria. The visual acuity in the right eye was 20/70 and 20/50 in the left eye. There was temporal pallor in both optic discs. There was no afferent pupillary defect. The visual fields were full. The extraocular movements were normal. There was no nystagmus. Facial sensation and power, hearing, the gag reflex and tongue movements were normal. There was mild spasticity in the left lower limb. There was give-way weakness in all muscles; that is to say, good peak power was attained briefly, then effort abruptly ceased. There was no muscle atrophy. Light touch, pin-prick, joint position sense and vibratory sense were normal. The left knee jerk was more active than the right one, but the other deep tendon reflexes were bilaterally symmetric and normal in amplitude. The plantars were flexor. There was a continuous tremor of both upper limbs, except when I distracted her attention during the examination. For example, when I tested the tone in her right upper limb, the tremor disappeared from her left upper limb, and vice versa. Again, when I tested heel to shin, the tremor disappeared in her upper limbs. The tremor was present at rest, and the arms moved in all directions at the wrist, elbow and shoulders. With finger to nose testing the tremor increased in amplitude, and the limb trembled back and forth and side to side. With heel to shin testing, the limbs trembled in the inferior-superior plane, not side to side. The tremor was also present with arms outstretched. The gait was normal.
Impression Discussion: This is a difficult case, because she clearly does have neurologic disease, but her tremor, which is her main symptom, seems psychogenic. The evidence of neurologic disease is her brain MRI, signs of bilateral optic neuropathy (impaired visual acuity and temporal disc pallor), and mild spasticity and hyper-reflexia in the left lower limb. My reasons for thinking her tremor is psychogenic are as follows. The direction of the tremor is always changing. The tremor stops when I distract her attention. Individual lower-limb movements were very "ataxic" but her gait was not ataxic. The "ataxia" on heel to shin testing was not a side to side movement, but an up and down movement. The upper-limb "ataxia" on finger to nose testing was not mainly a side to side movement but movement in all directions. There was no nystagmus or dysarthria, as there usually is in patients with severe cerebellar tremor. There were no signs of a mid-brain lesion, as there usually are in patients with mid-brain (rubral) tremor. Finally, give-way weakness, which is not a sign of genuine muscle weakness, was found on her neurologic examination.
Opinion: * * *
Permanent partial impairment. Sprain/strain neck, back, right arm and shoulder, right hip and leg: 0% of the whole person (AMA Guides, Fourth Edition). Multiple sclerosis aggravated by trauma: Visual loss in both eyes: this should be evaluated by an ophthalmologist. Mild spasticity and hyper-reflexia in left leg: 0% of the whole person (AMA Guides, Fourth Edition, Chapter 4.) Give-way weakness of limbs and psychogenic tremor: 0% of the whole person (AMA Guides, Fourth Edition, Chapter 4).
 {¶ 10} On a separate form, Dr. Winkelman indicated that claimant was capable of physical work activities exerting up to ten pounds constantly to move objects, up to 25 pounds frequently, and 25 to 50 pounds occasionally.
 {¶ 11} 5. Claimant submitted an April 2001 medical report from William R. Bauer, M.D., in support of her application.
 {¶ 12} 6. In June 2002, a staff hearing officer heard the PTD application and denied compensation:
It is the finding of the Staff Hearing Officer that this claim has been allowed for: sprain/strain neck, back, right arm shoulder, right hip and leg; multiple sclerosis aggravated by trauma.
* * *
The reports of Drs. Bauer, Ruch, Breitenbach, Hendricks, Mahna, Morgenstern, G.Katz, H. Tucker, J. Cahil, Lamm, Roda, Winkelman, Mitsumoto, Potash, Mann, DeOreo, Krudy, Mars, Gardner, Sweeney, Cappola, Gordon, Ratt, White, and Mr. Risius were reviewed and evaluated. This order is based particularly upon the reports of Dr. mark Winkelman, M.D., Neurologist and G. Denver Risley, Vocational Expert.
On 08/07/2001 the claimant was examined by Dr. Winkelman on behalf of the Ohio Industrial Commission. He reported,
"This is a difficult case, because she clearly does haven [sic] neurologic disease, but her tremor, which is her main symptom, seems psychogenic. The evidence of neurologic disease is her brain MRI, signs of bilateral optic neuropathy (impaired visual acuity and temporal disc pallor), and mild spasticity and hyper-reflexia in the left lower limb. My reasons for thinking her tremor is psychogenic are as follows. The direction of the tremor is always changing. The tremor stops when I distract her attention. Individual lower-limb movements were very `at[a]xic' but her gait was not ataxic. The `ataxia' on heel to shin testing was not a side to side movement, but an up and down movement. The upper-limb `ataxia' on finger to nose testing was not mainly a side to side movement but movement in all directions. There was no nystagmus or dysarthria, as there usually is in patients with severe cerebellar tremor. There were no signs of a mid-brain lesion, as there usually are in patients with mid-brain (rubral) tremor. Finally, give-way weakness, which is not a sign of genuine muscle weakness, was found on her neurologic examination."
Dr. Winkelman concluded that there is no impairment under the AMA guides 4th edition due to the allowed condition of sprain/strain neck, back, right arm and shoulder, right hip and leg, multiple sclerosis aggravated by trauma. The claimant has the residual functional capacity to engage in medium work.
Historically, the injured worker was a registered nurse working at Lake Hospital in Painesville on 04/09/2000 where she had been working for nearly 13 years. * * * She has not worked since the date of injury.
The injured worker * * * lives in a small condominium that is close to her parents house. She has a drivers license with no restrictions and drives a little but is driven to her doctor's appointments by her mother. * * * She has been treating with Dr. Bauer since 1992. Dr. Bauer has her on Methroxate, Symmetral, Travil, and Vicodin, according to claimant's testimony. The claimant or her attorney also verified that she is on Social Security Disability * * *.
This case was evaluated by G. Denver Risley, a vocational expert. He noted:
"Ms. Shaffer's primary vocational strengths are her 16th
grade education, a job history that has been DOT rated at the `light' lifting level and her `Younger age' at 46 years. She has the ability to drive. Her work history has been 100% `Skilled', and has included supervisory experiences. Ms. Shaffer has not had surgery. Ms. Shaffer has good walk/stand/sit capacity. Ms. Shaffer has no `unrelated' conditions. Ms. Shaffer's primary vocational limitations are tremors or multiple sclerosis and chronic pain. She defines her prior job as `Heavy' in nature. The tremor may impact on future clerical vocational potential unless modifications are possible."
In his 09/14/2000 review, the vocational expert listed several job classifications that are within the injured worker's residual functional capacity based on the physical limitations provided by the independent specialist Dr. Winkelman.
The adjudicator finds that the claimant's age of 46, college education, and work experience as a registered nurse are all vocational assets. She is also at the age where vocational rehabilitation services are a viable option.
The adjudicator finds that the injured worker's disability is permanent and partial. The injured worker has the residual functional capacity to engage in sustained remunerative employment. Therefore, this application is denied.
(Emphasis omitted.)
 {¶ 13} 7. Claimant sought reconsideration, arguing that Dr. Winkelman failed to recognize that the claim had been recognized for an aggravation of multiple sclerosis. The commission denied reconsideration.
Conclusions of Law:
 {¶ 14} Claimant contends that the commission abused its discretion in relying on the medical opinion of Dr. Winkelman, arguing that his report must be removed from evidentiary consideration as a matter of law because he refused to accept claimant's allowed condition of "multiple sclerosis aggravated by trauma."
 {¶ 15} At oral argument, claimant's counsel stated that claimant's primary medical problem is trembling that prevents her from being able to write and causes her to trip and drop things. Claimant stated that her physician, Dr. Bauer, believes that the tremors are caused by "multiple sclerosis aggravated by trauma." Therefore, because Dr. Winkelman opined that the tremors were not caused by "multiple sclerosis aggravated by trauma," he necessarily refused to accept the allowed condition, according to claimant.
 {¶ 16} First, it is well established that, where a medical expert fails to consider all the allowed conditions, the opinion cannot constitute "some evidence" on which the commission may rely. State ex rel. Richardson v. Quarto Mining Co. (1995),73 Ohio St.3d 358. However, in the present case, claimant has not established that Dr. Winkelman failed to consider all the allowed conditions.
 {¶ 17} At the beginning of his report, Dr. Winkelman expressly recognized that the claim was allowed for "multiple sclerosis aggravated by trauma." Thus, he recognized at the beginning of his report that the claim was allowed for the subject condition. Then, in his discussion of the relevant medical history, Dr. Winkelman discussed claimant's diagnosis of multiple sclerosis and her treatment for the disease. He briefly mentioned a 1997 MRI that showed progression of the disease and an increase in the lesions that are a characteristic feature of multiple sclerosis.
 {¶ 18} Further, in presenting his clinical findings on examination, Dr. Winkelman noted that, although claimant's tremors would be consistent with a mid-brain lesion, she had no sign of a mid-brain lesion. Finally, Dr. Winkelman again stated in his concluding paragraph that one of the allowed conditions was "multiple sclerosis aggravated by trauma." The magistrate concludes that Dr. Winkelman's identification of the allowed conditions at the beginning and ending of his narrative report, together with his discussion of brain lesions and other neurological findings/symptoms and his recitation of claimant's medical history, demonstrate that Dr. Winkelman directly addressed the issue of whether the symptoms of which claimant complained were caused by the allowed aggravation of multiple sclerosis.
 {¶ 19} Further, Dr. Winkelman explained in detail why he believed that the tremors, ataxia, and weakness were psychogenic in origin rather than caused by the allowed condition. For example, he noted that the tremors were continuous except when he distracted the claimant, at which point the tremors disappeared. He described several examples of this phenomenon. Also, he explained that the type and direction of the tremors were not consistent with the allowed condition. Further, he did not observe nystagmus or dysarthria, which would be expected in patients with tremors of the cerebellum that were severe. In addition, Dr. Winkelman noted that, although tremors such as those exhibited by claimant could be caused by a mid-brain lesion, claimant had no sign of a mid-brain lesion. In addition, the type of give-away weakness exhibited by claimant was not a sign of genuine muscle weakness.
 {¶ 20} Thus, the report demonstrates that Dr. Winkelman accepted that the condition of "multiple sclerosis aggravated by trauma" had been allowed in the claim. Further, the report shows that Dr. Winkelman accepted and observed that claimant was experiencing tremors of her extremities. However, he simply did not find a causal relationship between the allowed condition and the tremors, nor did he find a causal relationship between the allowed condition and the weakness, which was not tantamount to a refusal to accept the allowed condition. Dr. Winkelman accepted the allowed condition but did not find it to be the cause of certain symptoms. In reaching this conclusion, Dr. Winkelman disagreed with the treating physician, but that did not render his opinion defective as a matter of law.
 {¶ 21} Further, the magistrate notes that Dr. Winkelman had a duty to report his actual clinical findings upon examination. The fact that a condition was allowed in the claim did not require him to find that certain symptoms or impairments existed or that they existed as a result of the allowed condition. See, generally, State ex rel. Foley v. Vulcan Mfg. Co. (1998),84 Ohio St.3d 59; State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. His report need not be removed from evidentiary consideration because he concluded that claimant's presentation of tremors, weakness, and ataxia during the examination were inconsistent with causation by the allowed condition.
 {¶ 22} Moreover, other parts of Dr. Winkelman's report provide insight as to why he concluded that claimant's tremors and weakness were psychogenic in origin. First, he noted that claimant reported a history of depression since 1990 and that Dr. Bauer, her physician since 1992, was treating her with Triavil for depression. Dr. Winkelman further commented that claimant had no psychiatric history prior to her accident. Nonetheless, although Dr. Winkelman indicated that claimant suffered from a psychological condition, he could not consider claimant's depression or psychogenic impairments because the claim was not allowed for depression or any other psychiatric/psychological condition.
 {¶ 23} In sum, the magistrate finds no indication that Dr. Winkelman refused to accept "multiple sclerosis aggravated by trauma" as an allowed condition, nor does the magistrate find any other defect in his report that would bar it from consideration.
 {¶ 24} Nonetheless, the magistrate finds an abuse of discretion in the commission's order. In his report, Dr. Winkelman explicitly declined to assess the extent of impairment, if any, that claimant sustained due to visual problems related to "multiple sclerosis aggravated by trauma." He stated that, in order to assess her impairment completely, claimant should be examined by a specialist in ophthalmology. Specifically, Dr. Winkelman reported that claimant complained of tunnel vision and seeing spots, but he stated in his concluding paragraph as follows:
* * * Multiple sclerosis aggravated by trauma: Visual loss in both eyes: this should be evaluated by an ophthalmo-logist. * * *
 {¶ 25} The record reveals no medical opinion from an ophthalmologist or other specialist on the omitted matter. Given Dr. Winkelman's express statement that he omitted consideration of a significant physical complaint — one which could be related to an allowed condition — and given his express recommendation that this matter be evaluated by another specialist, the commission abused its discretion in proceeding to reach a PTD determination based on an incomplete medical evaluation of the allowed conditions.
 {¶ 26} It is not necessary in a PTD case for the commission to have one medical report that addresses all the medical issues; the commission may obtain a complete evaluation by referring claimant to more than one specialist. However, its PTD decision must be based on a complete medical evaluation. It may not rely on a single medical report that explicitly omits consideration of a significant medical complaint that may be related to an allowed condition, where the report makes clear that the medical evaluation is incomplete until another specialist's report is obtained. In other words, the commission cannot base its determination of medical capacity on a medical report that explicitly omits consideration of a medical complaint that may be related to an allowed condition and may contribute to the overall impairment relevant to PTD.
 {¶ 27} In summary, Dr. Winkelman's report was not defective. If he refused to address vision issues because he felt they were more appropriately addressed by a specialist in ophthalmology, his opinions on the matters that were addressed in his report remained relevant evidence. However, when the commission made a determination on claimant's medical status and capacities, it abused its discretion by relying on a single medical report in which the physician admittedly refrained from providing a complete medical evaluation.
 {¶ 28} The magistrate is mindful that claimant did not specifically focus on this aspect of Dr. Winkelman's report. However, upon reading the commission's order, and then reading Dr. Winkelman's report, the magistrate found the omission to be so obvious and material that this abuse of discretion could not be ignored. The magistrate raised the issue at oral argument, giving respondents' counsel the opportunity to address the question. For example, respondents argued that the commission was not required to obtain a medical opinion on vision problems because claimant still held a driver's license and Dr. Bauer did not specifically attribute impairment to loss of vision.
 {¶ 29} Nonetheless, claimant complained to Dr. Winkelman of vision problems that could be related to the allowed condition, and Dr. Winkelman expressly recommended that these complaints be evaluated by a specialist in ophthalmology. A limited writ is warranted because the commission based its finding of medical capacity on an incomplete medical evaluation in circumstances where the omission was viewed as significant by the commission's sole examiner.
 {¶ 30} Accordingly, the magistrate recommends that the court grant a limited writ of mandamus ordering the commission to vacate its denial of PTD, to obtain a complete medical evaluation of claimant's allowed conditions by its specialist(s), to hold a new PTD hearing, and to issue a new order granting or denying PTD compensation.
 /s/P.A. Davidson
P.A. DAVIDSON MAGISTRATE