DECISION ON OBJECTION TO MAGISTRATE'S DECISION
{¶ 1} Relator, Delbert L. Harris, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying him permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision the magistrate concluded "Dr. Scott's report is some evidence upon which the commission can rely for a medical evaluation of the allowed condition of asbestosis, [and] it is the magistrate's decision that this court deny relator's request for a writ of mandamus." (Magistrate's Decision, ¶ 21.)
 {¶ 3} Relator has filed an objection to the magistrate's conclusions of law, asserting "that the July 22, 2002 report of Dr. Jerry W. Scott can not [sic] act as `some evidence' because it failed to consider all of the allowed conditions of relator's industrial claim." (Relator's Objection, at 1.) In support, relator asserts that "Dr. Scott disregarded the claim allowance for asbestosis by causally relating his pulmonary disability to non-allowed conditions." (Relator's Objection, at 2.)
 {¶ 4} As the magistrate's decision properly concluded, Dr. Scott need not find an impairment arising out of the allowed condition. Rather, depending on his examination of relator, and recognizing that the allowed condition exists, the doctor may assess an impairment of zero percent arising from the allowed condition and attribute any impairment of pulmonary function to relator's smoking history. The fact the commission allowed the condition of asbestosis does not mean that it conclusively determined any impairment relator suffered was a result of the asbestosis. Dr. Scott opined to the contrary, and the commission found his report persuasive, as it properly may do. For the foregoing reasons, as well as those set forth in the magistrate's decision, the objection is overruled.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objection overruled; writ denied.
Lazarus, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Delbert L. Harris, : Relator, : v. : No. 03AP-992 Industrial Commission of Ohio: and Bearfoot Corporation, : (REGULAR CALENDAR) Respondents. :
 MAGISTRATE'S DECISION Rendered on March 29, 2004 Law Offices of Thomas Tootle Co., L.P.A., and ThomasTootle, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
IN MANDAMUS.
 {¶ 6} In this original action, relator, Delbert L. Harris, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. Relator has two industrial claims. On February 3, 1984, while employed as a press operator, relator sustained an industrial injury which is allowed for: "neck and right shoulder sprain with traumatic neuritits superimposed upon pre-existing degenerative arthritis with foraminal encroachment C-4, C-5, C-6 levels," and is assigned claim number 84-2381. Relator's second industrial claim is allowed for: "asbestosis," and is assigned claim number 99-583531. The commission officially recognizes October 7, 1999, as the date of diagnosis for the occupational disease, asbestosis. The medical issue in this action involves the asbestosis claim.
 {¶ 8} 2. On October 7, 1999, relator was examined by Robert B. Altmeyer, M.D., who specializes in pulmonary medicine. Dr. Altmeyer wrote:
My understanding is that you had a significant exposure to asbestos at Flintcote Co. in Ravenna, OH. You told me that this was a company which made asbestos pipes and you had extensive exposure to asbestos and you even personally opened up bags many times, which contained asbestos.
* * *
Fourteen years ago you quit smoking cigarettes but you had smoked a couple packs a day for about 15 years.
* * *
Your current respiratory symptoms include a productive cough and some shortness of breath with slight exertion. You have had no chest pain or heart disease and you have not coughed up blood. You have no history of tuberculosis, tuberculosis exposure, chest trauma, pleurisy or chest surgery. You did have pneumonia once in the past.
PHYSICAL EXAMINATION:
* * *
CHEST:
Auscultation of the chest revealed a few fine Velcro crackles at each base, particularly at the left base. These persist after coughing and deep breathing. There was a mild prolongation of the forced expiratory time and a few wheezes on maximal forced exhalation.
* * *
CHEST X-RAY INTERPRETATION:
I reviewed your chest x-ray taken October 4, 1999 that was apparently taken at Jackson Memorial Hospital and was read by the radiologist there as evidence of old granulomas disease and "no acute cardiopulmonary process" however, your film is abnormal. There is pleural thickening along the right lateral chest wall, category B/2/0 and a milder degree of pleural thickening, Category 1/1/0 along the left lateral chest wall. There are bilateral interstitial infiltrates, category 1/0 s/t by the * * * ILO International Classification of Radiographs for Pneumoconiosis. The heart, mediastinum, soft tissues, bony structure and tracheal air column were within normal limits.
IMPRESSIONS:
Based on the finding of persistent Velcro crackles of the bases, mild interstitial changes radiographically at the lung bases, a large exposure to asbestos and an appropriate latency period, it is my opinion that you have early pulmonary asbestosis.
Lung function testing was not performed today but that would only quantify whether there is any impairment associated with your asbestosis. It is my opinion that the asbestosis and asbestos-related pleural disease arose from the inhalation of asbestos fibers in the workplace. Apparently you do have a mild degree of chronic obstructive lung disease by review of some records which you brought with you. This is unrelated to asbestos exposure and is due to your prior cigarette smoking.
(Emphasis sic.)
 {¶ 9} 3. On September 25, 2001, relator was examined by Fred K. Branditz, M.D., who specializes in pulmonary medicine. Dr. Branditz wrote:
A set of pulmonary function tests date[d] 06-13-2001 were also available. These studies show a severe degree of obstructive lung disease physiology.
As the actual x-ray studies were not available for review and interpretation and since there was a significant question as to the development of interstitial lung disease, a high resolution chest CT scan was requested and performed after obtaining authorization from BWC. This study was only mildly abnormal. There was noted to be some bronchiectasis within the right middle lobe. This finding does not appear related to asbestos exposure. There was also noted some mild interstitial prominence in the left lower lobe laterally. It was thought that these findings could reflect some early interstitial fibrosis. There was no evidence of pleural thickening.
The findings on the CT scan are more sensitive and specific for interstitial lung disease and asbestosis when compared to a standard chest x-ray, even when interpreted by a B-reader. The findings on the current chest CT scan are not strongly suggestive of the development of asbestosis or any other diffuse interstitial lung disease. The findings in the left lower lung field are nonspecific. Although interstitial disease could be consistent with asbestosis, asbestosis is usually a diffuse process and is unlikely to be localized to a small area of the lungs. It is most likely that the CT scan findings are due to some other cause.
Although Mr. Harris does have an apparent significant history of exposure to asbestos fibers over a prolonged time, today's studies and findings, including his physical examination, high resolution chest CT scan, and review of records, do not indicate the development of asbestosis when a reasonable degree of medical probability is utilized.
To respond to the specific questions on the BWC request:
[One] Does the medical evidence attached support the allegeddiagnosis "asbestosis" as a direct and proximate result of thealleged industrial injury? No. The preponderance of evidence available today including that supplied by BWC, the exam of Mr. Harris, and the high resolution chest CT scan, do not indicate that Mr. Harris has developed asbestosis.
(Emphasis sic.)
 {¶ 10} 4. On December 19, 2001, the allowance issue in claim number 99-583531 was heard by a district hearing officer ("DHO"). Thereafter, the DHO issued an order disallowing the claim. The DHO's order states:
* * * [T]he claimant has not met the burden of demonstrating the contraction of an occupational disease in the course of his employment with the named employer. The District Hearing Officer relies on the 09/25/2001 report from Dr. Branditz indicating that the claimant does not have asbestosis. Therefore, this claim is disallowed.
 {¶ 11} 5. Relator administratively appealed the DHO's order of December 19, 2001. Following a January 31, 2002 hearing, a staff hearing officer ("SHO") issued an order that vacated the DHO's order and allowed the claim for asbestosis. The SHO's order states:
It is the order of the Staff Hearing Officer that this claim is allowed for "asbestosis" based upon the medical report of Dr. Robert B. Altmeyer, M.D. dated 10/7/99.
The Staff Hearing Officer notes that Dr. Altmeyer is a B-Reader. The date of diagnosis is 10/7/99.
 {¶ 12} 6. On April 23, 2002, relator filed an application for PTD compensation.
 {¶ 13} 7. On July 1, 2002, relator was examined at the commission's request by Jerry W. Scott, M.D. Dr. Scott is an assistant professor at the Joan C. Edwards School of Medicine, Marshall University. Dr. Scott was asked to examine for all the allowed conditions of the industrial claims.
 {¶ 14} 8. In his report, dated July 22, 2002, Dr. Scott describes his pulmonary examination:
Pulmonary examination, no cyanosis was noted. There was no clubbing of the extremities. Claimant showed no signs of dyspnea and was in no distress. Respiration were 14 to 18 at various times throughout the examination. Chest expansion was symmetrical. Very minimal AP increase was noted in chest. On auscultation, airflow was good throughout. Wheezes were noted on forced expiration bilaterally, however, were greater on the right.
 {¶ 15} 9. Among the documents Dr. Scott reviewed were the October 7, 1999 report of Dr. Altmeyer and the September 25, 2001 report of Dr. Branditz. Those reports were summarized by Dr. Scott in his report.
 {¶ 16} 10. Regarding pulmonary status, Dr. Scott concluded:
With regard to the claimant's pulmonary status, he has evidence of asbestos exposure, however, it is evident from his pulmonary function tests and his smoking history, that the claimant's symptoms and findings are most likely caused by chronic obstructive pulmonary disease, again, which is likely associated with the claimant's smoking history.
* * *
With regards to the claimant's pulmonary status, the claimant's history, physical examination and pulmonary function tests show a picture of a claimant with chronic obstructive pulmonary disease primarily, and although the claimant would fall under class IV as outlined on page 5/162 of the AMA Guides, this would be with regard to chronic obstructive pulmonary disease which is likely smoking related and he can be classed in this category with his FVC and FEVI of the pulmonary function test of 6/19/2001 and 4/2/2001.
With regard to diffusion capacity of carbon monoxide which would be a better predictor of restrictive lung disease impairment, the claimant has a documented DCO of 75% on the pulmonary function test of 6/19/2001, this would place him on 0% impairment. Therefore, at this time the claimant has 0% impairment with regard to asbestosis.
 {¶ 17} 11. For his ultimate conclusion regarding the two industrial claims, Dr. Scott wrote:
It is the opinion of this examiner that the claimant will never likely return to his previous work category. However, it is my feeling that the claimant is capable of working in the "light work" category with regard to the allowed conditions of the neck and right shoulder sprain with traumatic neuritis superimposed upon preexisting degenerative arthritis with foraminal encroachment of C4, C5 and C6 levels, and asbestosis. Realistically however, given the claimant's age, educational limitations, and history of alcohol use/abuse and other health factors. The claimant is not likely a good candidate for rehabilitation and retraining.
 {¶ 18} 12. Following an October 22, 2002 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
This order is based particularly upon the report of Dr. Scott.
Claimant is 61 years old. At hearing, he testified that he left school at the end of the 6th grade in order to work to support his family. The claimant has prior work experience as a laborer, press operator. It is noteworthy that Randi J. Owen, who performed a vocational evaluation on 09/11/2002 characterized claimant's employment as a press operator as skilled work, and one of the general laborer positions which the claimant performed as semi-skilled.
Claimant has two allowed industrial claims. On 02/03/1984, while employed as a press operator, claimant sprained his right shoulder pulling on stock. This claim has been allowed for right shoulder and neck conditions as listed above. Additionally, the claimant has an occupational disease claim which has been allowed for asbestosis.
Claimant was examined at the direction of the Industrial Commission on 07/22/2002 by Jerry W. Scott, M.D. Dr. Scott concluded that the claimant has an overall 5% whole person impairment as a result of the claimant's allowed right shoulder injuries, and an overall 9% impairment if the range of model motion is used or 15% impairment if the DRE model is used in evaluating his allowed cervical conditions. Taking these two allowed physical conditions together, Dr. Scott concluded that the claimant retains the residual physical capacity to engage in light work activities.
Dr. Scott also evaluated the claimant's pulmonary function capacities when considering only the allowed asbestosis. Dr. Scott concluded that the evidence he reviewed demonstrated that the claimant has no impairment from his asbestosis, and that the claimant's respiratory impairment is as a result of obstructive lung disease which was caused by the claimant's smoking.
At hearing counsel for claimant argued that Dr. Scott's conclusion that the claimant's respiratory impairment is caused by unallowed obstructive lung disease could not be considered under the rule of State ex rel. Zamora vs. IndustrialCommission [(1989), 45 Ohio St.3d 17] as some of the same testing relied upon by Dr. Scott was also relied upon by the physicians who recommended the disallowance of the asbestosis claim, whose opinions as to the allowability of asbestosis were obviously rejected when the claim was allowed. The Staff Hearing Officer does not find this argument to be well taken. A review of the claim file shows that the claimant's asbestosis claim was allowed relying upon the 10/07/1999 report of Robert B. Altmeyer, who concluded that the claimant has early pulmonary asbestosis with mild interstitial changes. Dr. Altmeyer also concluded that the claimant has chronic obstructive lung disease which is unrelated to asbestosis exposure and due to prior cigarette smoking. Dr. Altmeyer explicitly did not offer any opinion as to any impairment associated with the asbestosis. The Staff Hearing Officer does not find the report of Dr. Altmeyer to be inconsistent in the manners argued by claimant's counsel with the report of Dr. Scott.
The Staff Hearing Officer relies upon the report of Dr. Scott for the conclusion that when claimant's allowed industrial claims are considered he retains the capacity to engage in light strength work activities. In reaching this conclusion, unallowed medical conditions, including chronic obstructive pulmonary disease, have not been considered.
Claimant is 61 years old. Under the Ohio Administrative Code, this is a person closely approaching advanced age. The Staff Hearing Officer finds that this is a somewhat negative factor in evaluating his reemployment potential, but not an overwhelmingly negative factor.
Claimant has a 6th grade education. He reports that he can read and write and do basic math, but not well. This is also a somewhat, but not very strongly, negative factor in evaluating his reemployment potential.
Claimant has prior work experience which does not include light work, but does include skilled work. While claimant's prior work experience does not provide skills directly transferable to employment which is now within his capacities, his 28 year work history demonstrates that the claimant has the ability to meet the basic demands of entry jobs which are otherwise within his capacities.
Claimant is physically able to engage in light work when only allowed conditions are given consideration.
Claimant is an individual with some literacy skills who is less than traditional retirement age and who is physically able to engage in light work. Such an individual has a number of employment opportunities within his capacities. Claimant is physically able to engage in light assembly, monitoring type security positions, light inspector checker positions, light clerical positions, and other unskilled to semi-skilled entry level light work positions. Unlike persons limited to sedentary work, an individual physically able to engage in light work has a substantial variety of entry level unskilled positions available to him in the work force. The Staff Hearing Officer is cognizant that the claimant has medical conditions in additional [sic] to allowed conditions which further complicate his personal overall picture, however, those other medical conditions are not appropriate considerations to either advance or defeat the claimant's Application for Permanent Total Disability Compensation. When consideration is given only to allowed conditions, the claimant does not present with a permanent and total disability. Consequently, the claimant's Application for Permanent Total Disability Compensation is denied.
 {¶ 19} 13. On October 3, 2003, relator, Delbert L. Harris, filed this mandamus action.
Conclusions of Law:
 {¶ 20} The issue is whether Dr. Scott's report is some evidence upon which the commission can rely for a medical evaluation of the allowed condition, asbestosis.
 {¶ 21} Finding that Dr. Scott's report is some evidence upon which the commission can rely for a medical evaluation of the allowed condition of asbestosis, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 22} The issue is controlled by State ex rel. Middlesworthv. Regal Ware, Inc. (2001), 93 Ohio St.3d 214. In that case, Frances E. Middlesworth had an occupational disease claim allowed for "interstitial pulmonary fibrosis with bilateral apical lung disease." In March 1996, Middlesworth moved for PTD compensation. In June 1996, Middlesworth was examined by commission pulmonary specialist Dr. Stephen L. Demeter. Under the heading "assessment," Dr. Demeter wrote:
"At the present time I find no evidence to support the claim of interstitial pulmonary fibrosis with bilateral apical lung disease. A repeat chest x-ray would be recommended to attempt to confirm this. Additionally, a CAT scan with `thin cuts' would be highly suggested to determine whether or not there would be any evidence for bronchiectasis. Lastly, there were elements of her history which were suggestive of hypersensitivity pneumonitis which can create a problem of interstitial infiltrates on the chest x-ray. However, these infiltrates will disappear with time.
"Stating that I find no evidence for interstitial lung disease on this individual, I must say that she has reached maximum medical improvement. There is a 0% impairment arising from her condition. Her work capacity is unimpaired. I attribute her diminished vital capacity to her slight body build. Her slight body build, however, may prevent her from having the ability to perform heavy manual labor. However, this is outside this claim. I find no reason why she cannot return to her former position of employment. I find no reason why she can not perform any sustained remunerative activity with the exception of heavy and manual labor as noted above."
Id. at 214-215.
 {¶ 23} PTD was denied based upon Dr. Demeter's report. Middlesworth then filed a mandamus action in this court to challenge the PTD denial. This court granted the writ and thereafter an appeal was taken to the Supreme Court of Ohio. On the issue of PTD, the Supreme Court reversed the judgment of this court and reinstated the order of the commission. TheMiddlesworth court explained:
This controversy centers on Dr. Demeter's conclusion that "[a]t the present time I find no evidence to support the claim of interstitial pulmonary fibrosis with bilateral apical lung disease." The court of appeals interpreted this language as the doctor's refusal to accept the claim's allowed conditions. We disagree. Instead, we find our opinion in State ex rel.Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693 * * *, to be dispositive.
In Domjancic, an examining physician noted "[n]o evidence of a herniated disc L4-5 on the right" — the claim's allowed condition. That claimant, in turn, offered the very argument that Middlesworth presents. In rejecting that position, theDomjancic court concluded that "Dr. Gonzalez's report, at the outset, outlines all allowed conditions, substantiating his awareness of what the claimant's recognized conditions were. That the doctor, upon examination, found no evidence of a herniated disc, does not amount to a repudiation of the allowance. As the referee insightfully stated: "`Dr. Gonzalez was not required to merely parrot the allowed conditions as his medical findings. It was Dr. Gonzalez's duty to report his actual clinical findings. Obviously, the doctrines of res judicata and collateralestoppel do not apply to limit what a doctor may find during his examination.'" (Emphasis sic.) Id. at 695-696 * * *.
Obviously, Dr. Demeter knew that a pulmonary condition was at issue. He referred to "interstitial lung disease" three times in his report. "Interstitial fibrosis" and "interstitial infiltrates" are also mentioned, and again, the allowance is quoted verbatim in his report. However, according to Dr. Demeter, the condition no longer existed. This is not a situation where the doctor acknowledged the condition's existence but refused to accept the commission's prior determination of industrial causal relationship. In this case, it is immaterial whether Dr. Demeter believed that the claim was correctly or incorrectly allowed years ago. What matters is how the condition was affecting claimant's ability to work at the time of the examination, and Dr. Demeter found no impact. Accordingly, the commission, as the sole evaluator of evidentiary weight and credibility, did not abuse its discretion in citing Dr. Demeter's report as" some evidence" of a capacity for sustained remunerative employment. * * *
Id. at 215-216. (Emphasis sic.)
 {¶ 24} Applying the Middlesworth analysis to the instant case, Dr. Scott obviously knew that asbestosis was at issue when he opined "[t]herefore, at this time, the claimant has 0% impairment with regard to asbestosis."
 {¶ 25} Relator invokes the doctrine of collateral estoppel to argue that the commission's allowance of the claim for asbestosis precluded Dr. Scott from finding that relator has no impairment with regard to the asbestosis. Relator is incorrect. As the court held in State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693, a case citied in Middlesworth, the doctrines of res judicata and collateral estoppel do not apply to limit what a doctor may find during his examination.
 {¶ 26} Dr. Scott did not in effect disallow the claim by finding that the asbestosis produces no impairment. Allowance of the claim does not automatically equate with an impairment from the claim allowance at the time of any subsequent examination.
 {¶ 27} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
Kenneth W. Macke Magistrate.