DECISION
{¶ 1} Relator, Sharon Boylan ("relator"), filed this original action, which requests that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total *Page 2 
disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed two objections to the magistrate's decision.
 {¶ 3} First, relator asserts that the magistrate erred in finding all the employment options listed in the commission's order denying PTD to be sedentary in nature. Specifically, the magistrate stated: "The [Staff Hearing Officer ("SHO")] then agreed with Mr. Finnegan's conclusion that relator could perform work as a surveillance system monitor, a lot attendant, an information clerk, or a hostess. These are all sedentary jobs." According to relator, two of the jobs are light, not sedentary, jobs. We find, however, that the exact nature of the listed jobs is not part of the stipulated record. Therefore, we delete the following from the magistrate's opinion: "These are all sedentary jobs." Nevertheless, we agree with the commission that the characterization of the listed jobs as sedentary or light is not relevant to the underlying issue, that is, whether relator is capable of sustained remunerative employment.
 {¶ 4} Moreover, we note that the SHO's order simply identified the positions listed in the report of John Finnegan, M.Ed., CRC, CCM. The SHO did not expressly agree that relator could perform those jobs. Therefore, in order to clarify the SHO's findings, we change the first sentence quoted above to the following: "The SHO then noted Mr. Finnegan's conclusion that relator could perform work as a surveillance *Page 3 
system monitor, a lot attendant, an information clerk or a hostess." Once again, however, given the SHO's express finding that relator was only capable of sedentary work, this change has no impact on the underlying issue. Therefore, while we sustain relator's first objection, it has no substantive impact on the magistrate's decision.
 {¶ 5} Second, relator argues that the magistrate erred in finding that the commission did not abuse its discretion by relying on Mr. Finnegan's vocational report. In support, relator offers State ex rel. Wilson v.McGraw Constr. Co., Inc., Franklin App. No. 02AP-999, 2003-Ohio-3557. We agree with the magistrate's discussion of this issue. InWilson, the commission relied on a vocational report that specifically contradicted the commission's finding that the claimant could perform sedentary work. Here, the SHO specifically rejected Mr. Finnegan's conclusion that relator is capable of light work, but relied on Mr. Finnegan's analysis of the non-medical factors in order to determine that relator's age, education, and work history do not preclude her from entry-level work. The commission did not abuse its discretion by doing so. Therefore, we overrule relator's second objection.
 {¶ 6} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, except as we have expressly provided above. In accordance with the magistrate's decision, the requested writ is denied.
Objection sustained, objection overruled, writ of mandamusdenied.
 McGRATH, P.J., and BROWN, J., concur. *Page 4 
 APPENDIX A IN MANDAMUS {¶ 7} Relator, Sharon Boylan, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 5 
disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 8} 1. Relator has sustained two work-related injuries and her claims have been allowed as follows: "[Claim number 94-324239] has been allowed for: sprain or strain left finger; sprain of wrist, left. Claim number OD45438-22 has been allowed for: impingement syndrone [sic] and overuse syndrome, right upper extremity; right cervical brachial syndrome."
 {¶ 9} 2. Relator filed an application for PTD compensation on May 1, 2006. Relator's application was supported by the December 22, 2005 report of her treating physician, John N. Riester, M.D., who stated as follows:
 * * * Extensive treatment evaluation has left her with persistent pain and there is no further treatment I can offer her.
 In my opinion, her condition is permanent, and she is totally disabled from all forms of sustained remunerative employment solely as a result of these conditions.
 {¶ 10} 3. According to her PTD application, relator was 59 years old, had completed the eighth grade in 1962 when she left because she got married, could read and write well and could perform basic math, but not well.
 {¶ 11} 4. Relator was examined by Paul T. Scheatzle, D.O., who issued a report dated August 1, 2006. After noting his physical findings upon examination, Dr. Scheatzle opined that relator had reached maximum medical improvement, assessed a 14 percent whole person impairment, and concluded that relator was capable of performing at a sedentary work level. *Page 6 
 {¶ 12} 5. Relator was also examined by Paul C. Martin, M.D., who issued a report dated June 15, 2006. Dr. Martin concluded that, based upon his review of the medical records provided to him, many of relator's ongoing symptoms were due to non-allowed conditions. He concluded that she would be able to work lifting up to 20 pounds as long as she avoided frequent flexion/extension of her right wrist and avoided frequent or repetitive use of her upper extremities.
 {¶ 13} 6. An employability assessment was prepared by John Finnegan, M.Ed., CRC, CCM, dated September 5, 2006. Mr. Finnegan concluded that relator's age of 59 years would not affect her ability to meet the demands of entry-level employment. Further, he concluded that her eighth grade education would affect her ability to perform the more complex duties of skilled and semi-skilled work; however, her education would not affect her ability to meet the demands of entry-level jobs. He noted further that relator had worked for approximately 20 years, with 14 of those years being for the same employer. He concluded that this was a positive factor in her ability to meet the demands of entry-level jobs. Further, he concluded that relator's background demonstrated the ability to develop academic and other skills required to perform entry-level jobs at the light physical demand level. Mr. Finnegan also noted that relator had participated in rehabilitation services and that she had worked performing clerical tasks for her husband's business for approximately five years. Mr. Finnegan concluded as follows:
 The claimant is a 59-year-old divorced female with an 8th grade education. Based on the medical evidence in the file, it is reasonable to assume a residual functional capacity for employment in the light range, with additional restrictions of avoiding frequent flexion/extension of her left wrist and avoiding frequent or repetitive use of the upper extremities. *Page 7 
On this basis, the claimant is able to perform the jobs previously outlined. Based upon the claimant's age, education and work experience, she is capable of engaging in sustained remunerative employment. These opinions are true to a reasonable degree of vocational certainty.
 {¶ 14} 7. Relator submitted the June 7, 2006 rehabilitation report of John Ruth, M.S., CD.M.S. Mr. Ruth concluded that relator's age would significantly reduce her ability to adapt to new work situations and to perform work in competition with others. With regards to her education, he noted that although she had basic reading capabilities, she was unable to perform basic math. This fact would reduce her ability to perform work activities associated with business or cashier tasks. Ultimately, Mr. Ruth concluded that relator would not be able to perform sustained remunerative employment.
 {¶ 15} 8. Relator's application was heard before a staff hearing officer ("SHO") on February 15, 2007 and was denied. Specifically, the SHO relied upon the medical report of Dr. Scheatzle and concluded that relator retained the physical ability to engage in work at a sedentary level. Thereafter, the SHO summarized the following testimony:
 At this hearing there was testimony that somewhat contradicted the information on the permanent total disability application. According to a transcript that was taken in an alleged injury for the year 2000, the injured worker indicated she dropped out of school in the tenth grade. While she did not ever obtain a GED, the injured worker did attend a business college for approximately a year. The injured worker states she did not obtain any certificate from the business college because she did not finish the course. In addition the injured worker's testimony at this hearing indicates that she worked for her husband in a family owned heating and cooling business performing clerical work. The additional information gained through the injured worker's testimony is important because it shows that the injured worker has the capacity to perform clerical work or at a minimum the ability to be retrained for clerical work. While *Page 8 
less than a high school education is considered limited education; the more grades completed the less the limitation. In this case, even though the claimant has a limited education, she indicates she is able to read, write, and do basic math.
 {¶ 16} Ultimately, the SHO concluded that relator was capable of performing some sustained remunerative employment. The SHO relied in part on the vocational report of Mr. Finnegan. The SHO specifically accepted Mr. Finnegan's conclusions concerning the effect of relator's nonmedical disability factors on her reemployment potential. However, to the extent that Mr. Finnegan was of the opinion that relator could perform at a light duty level, the SHO rejected those conclusions after having previously found that relator was only capable of performing at a sedentary work level. The SHO concluded as follows:
 After considering the injured worker's past education and employment in the clerical field, as well as Mr. Finnegan's opinion that the injured worker can engage in entry-level work, the Staff Hearing Officer concludes that the injured worker retains the ability to be employed. According to Mr. Finnegan's report, the injured worker could be employed as a surveillance system monitor, a lot attendant, information clerk, or hostess.
 An injured worker is permanently and totally disabled if the evidence shows that he or she is unable to engage in sustained remunerative employment utilizing current skills, or skills that can reasonably be developed. The evidence in this case shows that the injured worker can be employed using her current skills, and she can increase her employment options with additional training. Since the injured worker can be employed with current skills and acquire new skills through retraining, she is not permanently and totally disabled.
 {¶ 17} Lastly, the SHO noted that given relator's testimony that she took post-high school classes in the clerical field and had performed clerical work for her *Page 9 
husband's business, there was no indication that relator was intellectually unsuited for clerical work in spite of the fact that she never obtained her GED.
 {¶ 18} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose *Page 10 
employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision.State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 21} In this mandamus action, relator contends that the commission abused its discretion by relying upon the vocational report of Mr. Finnegan and by finding that there was "some evidence" that she could perform clerical work. For the following reasons, this magistrate disagrees and finds that this court should deny relator's request for a writ of mandamus.
 {¶ 22} In arguing that Mr. Finnegan's vocational report could not be relied upon, relator argues that Mr. Finnegan was of the opinion that relator could perform at a light duty level. Because the commission relied on medical evidence that relator could only perform at a sedentary work level, relator contends that Mr. Finnegan's vocational report must be removed from evidentiary consideration. Relator further notes that Mr. Finnegan listed certain jobs which he believed relator was capable of performing and that some of those jobs were at a light duty level. Relator then points to the vocational report of Mr. Ruth and states that the commission did not take relator's additional limitations resulting from her ability to perform only sedentary work into account. This magistrate disagrees.
 {¶ 23} First, after determining that relator could perform at a sedentary work level, the SHO specifically noted that Mr. Finnegan had concluded that relator could perform at a light duty level. In his vocational report, Mr. Finnegan had listed the reports of both Drs. Scheatzle and Martin. Dr. Scheatzle had concluded that relator could perform at a sedentary work level while Dr. Martin had concluded that relator could *Page 11 
perform at a light duty level. The SHO then noted that relator's age would not preclude her from performing sustained remunerative employment. Further, while the SHO agreed with Mr. Finnegan's characterization of relator's education as limited, the commission agreed that her education did not prohibit her from engaging in entry-level unskilled work. Further, the SHO specifically pointed out that relator had taken post-high school classes in the clerical field and had worked for her husband's business performing clerical tasks for five years. As such, the SHO found that despite not having a GED, relator was capable of performing some clerical work. Lastly, the SHO agreed with Mr. Finnegan's conclusion that relator's 20 year work history was a positive factor as it demonstrated her ability to perform both semi-skilled and skilled work. [The SHO then noted Mr. Finnegan's conclusion that relator could perform work as a surveillance system monitor, a lot attendant, an information clerk or a hostess.]
 {¶ 24} Relator cites this court's decision in State ex rel. Wilson v.McGraw Constr. Co., Inc., Franklin App. No. 02AP-999, 2003-Ohio-3557, in support of her argument that the commission abused its discretion when it relied on the vocational report of Mr. Finnegan. Relator concludes that this court granted mandamus relief to the claimant inWilson because half of the job options listed by the vocational expert were light duty while the commission had found that the claimant was only able to perform sedentary work. However, the magistrate finds that relator has misinterpreted this court's decision in Wilson.
 {¶ 25} In Wilson, the claimant had both physical and psychological conditions which were allowed in his claim. A vocational report was prepared by Barbara Burk. Based upon Dr. Berg's psychological assessment, Ms. Burk had concluded that the *Page 12 
claimant could not perform sedentary employment because he would not be able to meet job quotas. However, Ms. Burk concluded that the claimant would be able to perform jobs at a light duty level.
 {¶ 26} The commission had determined that the claimant could only perform sedentary work. This court, through its magistrate, concluded that the commission's reasoning was flawed with respect to the nonmedical disability factors. Specifically, the magistrate stated:
 The fundamental flaw with the commission's order is not with its listing of employment options. As previously noted, Burk concludes in her addendum report that [the claimant] cannot perform sedentary employment given Dr. Berg's assessment, yet the commission found that [the claimant] is limited to sedentary employment due to the physical and psychological conditions of the claim.
Id. at ¶ 80.
 {¶ 27} The problem present in the Wilson case is not present in this case. Contrary to relator's argument, in Wilson, this court did not criticize the fact that Ms. Burk had listed both sedentary and light duty jobs which she believed the claimant could perform. Instead, the problem was that the commission relied on her vocational report in spite of the fact that she had concluded that, based upon the medical evidence, the claimant could not perform sedentary work. That problem is not present in this case. The commission relied upon medical evidence that relator could perform at a sedentary work level and found that Mr. Finnegan's analysis of the nonmedical disability factors supported the conclusion that she could perform some sustained remunerative employment at a sedentary work level. This was not an abuse of discretion. *Page 13 
 {¶ 28} Relator also contends that the commission abused its discretion by concluding that relator was able to perform clerical work. This magistrate disagrees.
 {¶ 29} As noted in the commission's order, relator testified that she had worked for her husband performing clerical work duties for five years. Further, relator had testified that she took business-related classes after high school. This was evidence that relator could perform clerical work and relator's argument to the contrary is unfounded.
 {¶ 30} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1