DECISION
{¶ 1} This is an original action in mandamus. Relator, Kurt Vinson, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his application for permanent total disability ("PTD") compensation, and to grant the application. Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court.
 {¶ 2} The magistrate issued a decision with findings of fact and conclusions of law and recommended that this court deny the requested writ of mandamus. Relator filed objections to the magistrate's decision, which are before this court for review pursuant to Civ.R. 53(E)(4).
 {¶ 3} Relator sustained a work-related injury on February 24, 1988. His claim was allowed for "lower center back; lumbar strain; sacral strain; aggravation of pre-existing degenerative disc disease." Relator was 32 years old at the time of the injury, had completed the tenth grade and dropped out of school to join the military. Relator agreed he could read and write, although not proficiently, and could perform basic mathematical calculations. Relator participated in rehabilitation services including one year of automotive training, bulldozer driver training and computer training.
 {¶ 4} Relator supported his claim for PTD with a report of Mitchell Simons, M.D., dated October 18, 2004. Dr. Simons was of the opinion that relator was permanently and totally disabled.
 {¶ 5} Relator was examined by Andrew Freeman, M.D. Dr. Freeman's report of December 17, 2004 includes the opinion that relator had reached maximum medical improvement ("MMI") of his condition and was assessed as having an eight percent whole person impairment. Dr. Freeman concluded that relator was capable of performing sedentary work as defined in the Ohio Administrative Code.
 {¶ 6} William T. Cody prepared a vocational assessment dated March 6, 2005. After reviewing relator's work history and education, including his vocational rehabilitation training in the operation of a bulldozer, Cody concluded that relator was permanently and totally disabled. Cody did not list relator's vocational rehabilitation in computer training.
 {¶ 7} A staff hearing officer ("SHO") heard relator's application for PTD. The SHO relied on the medical report of Dr. Freeman in finding that relator could perform sedentary work. The SHO went on to conclude that relator could perform certain jobs and made reference to a computer program: "Job Browser Pro Version 1.4 Computer Program by Skilltran."
 {¶ 8} The commission granted relator's request for reconsideration and exercised its continuing jurisdiction under R.C. 4123.52. The commission found that the SHO's order contained a clear error because the order referred to "Job Browser Pro Version 1.4" program, a computer program not available to the general public, as the basis for the order, when in fact, the SHO actually used commonly available reference materials available to vocational experts and the general public. The commission set aside the SHO's order.
 {¶ 9} The commission went on to consider the application. The commission relied upon the December 17, 2004 report of Dr. Freeman as well as the commission's own independent evaluation of relator's disability factors and information contained in the Dictionary of Occupational Titles, a reference work available to vocational experts and the public alike. The order set out several employment options available to relator, "such as employment as a sedentary assembler, security system monitor or sedentary information clerk." The commission found that relator was not permanently and totally disabled.
 {¶ 10} The magistrate concluded that the record contained some evidence to support the findings of the commission and that relator had failed to demonstrate that the commission abused its discretion. Relator filed objections to the magistrate's decision.
 {¶ 11} Relator argues, as he did before the magistrate, that he had no way of knowing what type of information existed in the computer program relied upon by the commission in finding against relator. Therefore, relator believes the commission's order failed to adequately satisfy the requirements of State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and denied him due process of law.
 {¶ 12} We agree with the magistrate. The commission vacated the SHO order that indicated reliance upon a computer resource not available to the public. Thereafter, the commission did not rely upon that non-public resource, but, instead, identified the Dictionary of Occupational Titles as the reference material it chose to use. The commission may rely upon specialized vocational reference works to determine the existence of jobs that a particular claimant may be able to do. The commission did so in this case.
 {¶ 13} It is the function of the commission to determine the credibility and the weight to be given to reports and other evidence presented. The commission did so in this case. The commission chose to rely upon the medical report of Dr. Freeman. The commission is not required to explain why certain evidence was not relied upon. State ex rel. Lovell v. Indus. Comm.
(1996), 74 Ohio St.3d 250. The commission is not required to set out specific jobs that a claimant may perform.
 {¶ 14} We find that the order of the commission is supported by some evidence of record and is not an abuse of discretion. The order sets forth the evidence relied upon and briefly explains the reasoning of the commission. Therefore, the order satisfies the requirements of Noll, supra. Finally, the order did not rely upon matters unavailable to relator but, instead, relied, in part, upon a standard reference work, the Dictionary of Occupational Titles, accessible by vocational experts and the public. Relator was not subject to a denial of due process of law.
 {¶ 15} Relator's objections are overruled and the decision of the magistrate is adopted. The request for a writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Petree and McGrath, JJ., concur.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Kurt Vinson, :
 Relator, :
v. : No. 05AP-1136
Industrial Commission of Ohio : and Trailines Incorporated, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on May 18, 2006 Harris Burgin LPA, and Ann-Dana Medven, for relator.
Jim Petro, Attorney General, and Eric J. Tarbox, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 16} Relator, Kurt Vinson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 17} 1. Relator sustained a work-related injury on February 24, 1988, and his claim has been allowed for "lower center back; lumbar strain; sacral strain; aggravation of pre-existing degenerative disc disease."
 {¶ 18} 2. At the time of his injury, relator was 32 years old. Pursuant to his application for PTD compensation, relator had completed the tenth grade and had left school to join the military. Relator had not obtained his GED, but had undergone additional training as a bulldozer driver. Relator also indicated that he could read, write and perform basic math; however, not well. The record indicates that relator has participated in rehabilitation services including one year of automotive training, bulldozer driver training, and a full-time computer training program at Southwestern Career School which relator began in August 2002. However, relator had gall bladder surgery in December 2002 and never finished the computer training program.
 {¶ 19} 3. Relator's application for PTD compensation was supported by the October 18, 2004 report of Mitchell E. Simons, M.D., who opined that relator was permanently and totally disabled. On an occupational activity assessment, Dr. Simons indicated that relator could sit, stand and walk for zero to three hours; lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; occasionally climb stairs, use foot controls, handle objects, and reach overhead, at waist and knee levels; and relator was precluded from climbing ladders, crouching, stooping, bending, kneeling, and reaching at floor level.
 {¶ 20} 4. Relator was also examined by Andrew Freeman, M.D., who issued a report dated December 17, 2004. Dr. Freeman opined that relator had reached maximum medical improvement, assessed an eight percent whole person impairment, and concluded that relator was capable of performing sedentary work as such is defined by the Ohio Administrative Code.
 {¶ 21} 5. A vocational assessment was prepared by William T. Cody and dated March 6, 2005. Mr. Cody listed relator's work history and his education, including his vocational training in the operation of a bulldozer. Mr. Cody did not list relator's participation in the automotive training class or his computer training program. Given that relator's vocational experience has been in very heavy, heavy and medium levels of physical demand, and that relator has no skills which would transfer to sedentary work, Mr. Cody concluded that relator was permanently and totally disabled.
 {¶ 22} 6. Relator's application was heard before a staff hearing officer ("SHO") on April 18, 2005. The SHO relied upon the medical report of Dr. Freeman and concluded that relator could engage in sedentary work activity. The SHO found that relator's age of 49 years was not a barrier to his ability to return to entry-level sedentary employment, that his tenth grade education as well as his completion of training in the past indicates that relator has sufficient academic skills to engage in entry-level sedentary employment, and that, although his past work experience did not provide him with skills which would be transferable to sedentary work, that his prior work history would not be a barrier to his ability to engage in entry-level unskilled sedentary employment activity. Thereafter, the hearing officer identified the following computer program which the hearing officer had utilized in determining that there were certain jobs available which relator could perform: "Job Browser Pro Version 1.4 Computer Program by Skilltran."
 {¶ 23} 7. Relator filed objections to the SHO's report based upon the commission's utilization of the computer program which claimants do not have access to without paying a fee.
 {¶ 24} 8. The commission issued an interlocutory order, mailed May 27, 2005, and determined that it was appropriate for the commission to exercise its continuing jurisdiction over relator's application.
 {¶ 25} 9. Thereafter, the matter was heard before the commission on June 21, 2005. At that time, the commission granted relator's request for reconsideration and vacated the prior SHO order for the following reasons:
It is the finding of the Industrial Commission that the injured worker has met his burden of proving that the Staff Hearing Officer order, dated 04/18/2005, contains a clear error. Specifically, the Staff Hearing Officer cited to version 1.4 of Job Browser Pro, a computer software program that assembles information from widely accepted and utilized occupational reference materials (with attribution to such materials) as a basis for his decision, but failed to identify the reference materials contained in Job Browser Pro that were referenced by the Staff Hearing Officer. The citation only to Job Browser Pro gave the misleading impression that Job Browser Pro, which is not available to the public without subscription, was relied upon by the Staff Hearing Officer when, in reality, the Staff Hearing Officer merely referenced and utilized through that software commonly used reference materials available to vocational experts and the general public alike. Therefore, the Industrial Commission exercises continuing jurisdiction pursuant to R.C.4123.52 and State ex rel. Nicholls v. Indus. Comm. (1998),81 Ohio St.3d 454, and State ex rel. Foster v. Indus. Comm.
(1999), 85 Ohio St.3d 320, in order to correct this error.
The action is based upon the motion made by Mr. Thompson, seconded by Ms. Owens, and voted on as follows[.]
 {¶ 26} Thereafter, the commission denied relator's application for PTD compensation. The commission relied upon the report of Dr. Freeman and concluded that relator was capable of performing some sedentary work activity. The commission then cited relator's age, his tenth grade education, his previous work experience as a truck driver, construction worker, backhoe operator, mechanic, tire changer, and supply clerk and noted that relator had training as a bulldozer operator, as a mechanic, and in the repair of computers. With regard to relator's vocational training, the commission noted as follows:
The Commission finds that the injured worker's computer training started in August of 2002 and lasted until December of 2002, when he had to terminate his participation in the class due to gall bladder surgery, which was unrelated to his allowed conditions. The computer training class required the injured worker to read written material, and to engage in hands-on training with regard to fixing the computer hardware.
The injured worker previously indicated to the Staff Hearing Officer that his past training as a bulldozer operator and automotive mechanic required a combination of hands-on training as well as book training. The Commission finds that the injured worker successfully completed his training as a bulldozer operator as well as a mechanic. The Commission further finds that the injured worker was able to continue in his computer training until it was terminated due to treatment for non-allowed medical conditions. The Commission finds no written indication that the injured worker was having difficulty completing that class.
 {¶ 27} The commission found relator's age of 49 years was not a barrier to his returning to entry-level sedentary employment activity or engaging in retraining for such employment. Furthermore, the commission found that relator's tenth grade education as well as his completion of training in the past indicates that relator has sufficient academic skills to engage in entry-level sedentary employment activity or in retraining for other sedentary employment. While the commission found that relator's past work experience did not provide him with transferable skills to sedentary work, the commission found that his past work history was not a barrier to his ability to engage in entry-level unskilled sedentary employment activity. The commission noted that there were a number of jobs available as follows:
The Commission finds that there currently are a number of employment options available to the injured worker, such as employment as a sedentary assembler, security system monitor or sedentary information clerk.
 {¶ 28} In summation, the commission indicated that it was relying upon the December 17, 2004 report of Dr. Freeman as well as the commission's independent evaluation of relator's disability factors and information contained in the Dictionary of Occupational Titles.
 {¶ 29} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 31} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 32} In the present case, relator argues that the commission's order does not satisfy the requirements of Noll
and its progeny. Specifically, relator argues that the commission's June 21, 2005 order is essentially identical to the July 23, 2003 order but without the reference to the Job Browser Pro computer program. Relator contends that his due process rights were violated because he has no way of knowing what type of information is entered into the computer program upon which the commission then relies in finding that he, and other claimants, are not permanently and totally disabled. Further, relator asserts that he did not have the opportunity to submit evidence rebutting the commission's list of jobs it found he could perform. For the reasons that follow, the magistrate finds that relator's argument is not persuasive.
 {¶ 33} First, the commission specifically vacated the July 23, 2003 SHO order wherein the hearing officer had relied upon the Job Browser Pro computer program. The commission found that it was error to simply cite the computer program without identifying the reference materials contained therein which were actually referenced by the hearing officer in ultimately deciding that relator was not entitled to PTD compensation. However, in its June 21, 2005 order denying relator's application for PTD compensation, the commission did not cite to the Job Browser Pro computer program and, instead, identified the Dictionary of Occupational Titles as its reference material.
 {¶ 34} While relator concedes that the commission is the ultimate evaluator of the nonmedical disability factors and that vocational issues are within the exclusive province of the commission, relator appears to argue that the commission cannot utilize any reference materials when it makes vocational assessments. However, this magistrate finds that the commission's use of various reference materials which it identifies in its orders does not violate the due process rights of this relator or any other claimant. In order to evaluate the vocational factors, hearing officers have to have specialized knowledge and access to reference materials so that they can determine whether or not there are jobs within a particular claimant's abilities. As such, the magistrate finds that it is not an abuse of discretion for the commission to utilize various reference materials, which it identifies in its orders, and which are available to other vocational assessors and individuals, in reaching its determinations as to the issue of whether or not a claimant is permanently and totally disabled. Further, the commission is not required to cite any jobs which it believes a claimant can perform and the commission can make its decision regarding a claimant's ability to perform any sustained remunerative employment without relying on vocational reports in the record. See State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266.
 {¶ 35} This magistrate finds that the commission's analysis satisfies the requirements of Noll and its progeny. The commission identified relator's age and his education, along with his specialized training as positive vocational factors. The commission then found that, while relator's prior jobs did not provide him with skills transferable to sedentary work, that his past work history was not a barrier to reemployment. The commission did provide an explanation and analysis which meets the requirements of the law.
 {¶ 36} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation, and relator's request for a writ of mandamus should be denied.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE