[Cite as *State ex rel. Floyd v. Indus. Comm.*, 2016-Ohio-5859.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Charles W. Floyd, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1019 |
| The Ohio Industrial Commission and Delmas Conley Trucking of Ohio, Inc. d.b.a. Conley Trucking, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on September 15, 2016

*Spears & Associates Co., L.P.A.,* and *David R. Spears,* for relator.

*Michael DeWine*, Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Charles W. Floyd filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant his application for permanent total disability ("PTD") compensation.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings.

{¶ 3} The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, attached hereto, which contains detailed

findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 4} Counsel for Floyd has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full, independent review.

{¶ 5} Floyd was a truck driver with minimal education and minimal educational skills such as reading and math. His injuries have taken him out of the range of people who can serve as a truck driver.

{¶ 6} Floyd tried to obtain rehabilitation services, but his file was closed due to his intellectual limitations, and due to the amount of pain he experiences if he tried to perform tasks above head level or below waist level. However, hope was expressed that if he could improve his strength or intellectual functioning, his file could be reopened.

{¶ 7} Floyd's challenges are both physical and emotional. He would have trouble working in close proximity with other people. He has ongoing neck and back problems. Floyd apparently feels he is only suited to being a truck driver, and can no longer be a truck driver.

{¶ 8} Counsel for Floyd sets forth three specific issues for our consideration:

> [I.] THE CONCLUSION OF THE MAGISTRATE THAT THE RELATOR NEVER ATTEMPTED TO IMPROVE HIS PHYSICAL SITUATION SO HE COULD PARTICIPATE IN VOCATIONAL REHABILITATION IS NOT BASED UPON THE RECORD AND CONSTITUTED LEGAL ERROR.
>
> [II.] THE MAGISTRATE INCORRECTLY DETERMINED THAT THE BWC, WHEN AFFIRMING A CLOSURE OF A VOCATIONAL REHABILITATION FILE, SPECIFICALLY RECOMMENDED THAT THE RELATOR PARTICIPATE IN PAIN MANAGEMENT AND A HOME EXERCISE PROGRAM SO HE COULD POTENTIALLY MANAGE HIS PAIN BETTER AND INCREASE THE LEVEL OF WORK HE WAS CAPABLE OF PERFORMING.
>
> [III.] THE DECISION OF THE MAGISTRATE FAILED TO ADDRESS THE ARGUMENT RAISED BY RELATOR IN HIS MERIT BRIEF PERTAINING TO THE COMMISSION'S FAILURE TO EXPLAIN WHY POSITIVE VOCATIONAL EVIDENCE WAS NOT CONSIDERED AND FAILED TO ADDRESS ARGUMENTS OF THE RELATOR THAT THE

DECISION OF THE OHIO INDUSTRIAL COMMISSION INACCURATELY ASSESSED RESTRICTIONS SET FORTH IN THE MEDICAL REPORTS OF DR. KEARNS AND DR. RICHETTA.

{¶ 9} Part of the challenge Floyd has to overcome in order to get the commission to approve his application for PTD compensation is the fact he is a relatively young man, a man in his late 40's. However, his brain is basically fully developed. He perhaps could improve his reading skills or his skills in mathematics, but his intellectual ability on the whole is relatively fixed.

{¶ 10} The same is not true for his physical strength and endurance. His muscles can be made stronger and his physical endurance can improve. As a result, his ability to perform light-duty work at waist level could improve.

{¶ 11} The record before us indicates that no further medical procedures are warranted and that Floyd has reached maximum medical improvement ("MMI"). However, MMI is a medical plateau, not a permanent condition which is capped from all improvement resulting from nonmedical efforts.

{¶ 12} We do not disagree with our magistrate's findings in this regard and therefore overrule the first objection.

{¶ 13} As to the second objection, the magistrate's decision accurately reflects the findings of Jennifer Beale which resulted the closing for Floyd's rehabilitation. The report clearly suggests that if Floyd applies himself to improving his situation with respect to pain, new efforts at rehabilitation could be pursued.

{¶ 14} The second objection is overruled.

{¶ 15} We do not see the decision of the commission as inaccurately assessing the restriction proved by Dr. Kearns and Dr. Richetta. As a result, the third objection is overruled.

{¶ 16} All three sets of objections having been overruled, we adopt the findings of fact and conclusions of law contained in the magistrate's decision. We, therefore, deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

KLATT and SADLER, JJ., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel. Charles W. Floyd,         :

        Relator,                                      :

v.                                                            :                    No. 15AP-1019

The Ohio Industrial Commission and         :                    (REGULAR CALENDAR)
Delmas Conley Trucking of Ohio, Inc.
d.b.a. Conley Trucking,                            :

        Respondents.                             :

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on May 17, 2016

*Spears & Associates Co., L.P.A.,* and *David R. Spears,* for relator.

*Michael DeWine*, Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 17} Relator, Charles W. Floyd, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 18} 1. Relator sustained a work-related injury on December 4, 2002, and his workers' compensation claim was originally allowed for the following conditions:

> Sprain lumbar region; sprain of neck; contusion of lumbar back; C3-4 disc protrusion causing foraminal stenosis.

{¶ 19} 2. Relator's claim was specifically disallowed for: "disc bulge C4-5."

{¶ 20} 3. Relator underwent surgery and received temporary total disability ("TTD") compensation from October 30, 2009 through October 19, 2011 when his TTD compensation was terminated based upon a finding that his allowed conditions had reached maximum medical improvement ("MMI").

{¶ 21} 4. Because he was unable to return to his former position of employment, relator was referred for vocational rehabilitation services on October 14, 2011. A functional capacity evaluation ("FCE") was ordered and indicated that relator's overall strength level was light but that he had significant difficulty with repetitive or sustained reaching activities. During the vocational evaluation, relator complained of increasing and spreading pain and discomfort in both shoulders and upper extremities. The evaluator noted that relator had worked approximately 15 years as a dump truck driver. At the time, relator was 46 years of age, had left school after the 10th grade, had not obtained a GED, and, according to the Wide Range Achievement Test, was functioning at the 4th and 5th grade levels on oral reading, spelling, and arithmetic tasks. The evaluator noted that relator did not believe he was capable of performing any work other than his prior work as a dump truck driver. The evaluator also noted the absence of readily accessible transferrable skills and suggested that relator would need specific vocational preparation to equip him with skills necessary to successfully compete with other workers for jobs which fit within his current physical tolerance level.

{¶ 22} 5. On December 12, 2011, it was determined that, based on the vocational evaluation as well as the FCE, relator did not appear to be a feasible candidate for further vocational rehabilitation services. As such, the employer's Managed Care Organization ("MCO") closed relator's vocational rehabilitation file.

{¶ 23} 6. Relator challenged the closure of his vocational rehabilitation file.

{¶ 24} 7. Jennifer Beale reviewed relator's vocational rehabilitation file, and, although she noted that closure was appropriate at that time, she indicated that relator

should be referred again at a later date.  Specifically, in her January 9, 2012 report, Beale stated:

> Upon review of the BWC claim documents, it is this peer reviewers professional opinion that the IW's file remain closed. The IW was referred to the vocational rehab program by his POR. He was met by the VCM for his IA and the IW wanted to participate in services. The POR requested an FCE and active physical therapy for strengthening. According to the FCE results the IW demonstrated light strength overall with significant difficulty with repetitive or sustained reaching. The evaluator concluded that "the light physical demand capacity combined with the limited reaching ability will make competitive employment very challenging for the IW." The evaluator also noted that he "did not believe the IW would be a viable candidate for a vocation within his prior occupation of truck driving due to his limited cervical range or motion and guarded movement." Moreover a comprehensive vocational evaluation was completed and during the evaluation the IW was observed by the evaluator to be experiencing pain and discomfort in his shoulders and upper extremities to the point that it interfered with his ability to perform sedentary tasks. The IW also was noted to have tested at a 4th and 5th grade reading levels on oral reading, spelling and arithmetic tasks. This as well as the lack of accessible transferable skills suggested by the evaluator that the IW was not feasible for the vocational rehab program. This peer reviewer is in agreement with these conclusions.

> * * *

> Treatment Modification/Recommendations * * *:

> The IW should continue to follow up with his POR as indicated and perform a [Home Exercise Program]. The HEP as well as pain management may assist the IW in regaining some pain relief and be able to perform at a medium level of work. This may allow him to be able to work a light labor position or other work he feels he can perform in the future. The POR can refer him to the vocational rehab program at a later date and he may be able to participate in job placement and development if he is medically stable at that time. Since he is only 46 it would be a shame if he could not reenter the work force due to lack of transferable skills and low educational level. If the IW wants to work he should discuss

this with his POR and possibly obtain a release to RTW when he is able and seek a job that he feels he can perform.

{¶ 25} 8. In an order mailed January 18, 2012, the Ohio Bureau of Workers' Compensation ("BWC") relied on the Beale report and affirmed the closure of relator's file, stating:

> Per the peer review of Jennifer Beale, CRRN of 1/9/2012, she states upon review of the claim documents, it is this reviewer's opinion that the injured worker's file remain closed. The injured worker['s] physician of record (POR) requested a functional capacity exam (FCE). According to the FCE results the injured worker demonstrated light strength overall with significant difficulty with repetitive or sustained reaching. The evaluator concluded that "the light physical demand capacity combined with the limited reaching ability will make competitive employment challenging for the injured worker." The evaluator noted that he "did not believe the injured worker would be a viable candidate for a vocation within his prior occupation of truck driving due to his limited cervical range or motion and guarded movement." The lack of accessible transferable skills suggested by the evaluator that the injured worker was not feasible for the vocational rehab program. The POR can refer him to the vocation rehab program at a later date, if he is medically stable at that time

{¶ 26} 9. Soon thereafter, relator filed his first application for PTD compensation on February 6, 2012.

{¶ 27} 10. A hearing was held before a staff hearing officer ("SHO") on November 15, 2012. The SHO denied relator's application after relying on the report of Dr. Eugene Lin, M.D., who concluded relator had no focal motor or sensory deficits in his right upper extremity and only mildly limited flexion and extension on range of motion testing. Dr. Lin concluded that relator was capable of performing light-duty work with the further limitation of lifting only five pounds overhead on an occasional basis.

{¶ 28} The SHO noted that relator was only 47 years old and acknowledged that the vocational report indicated his current academic skills were at the 4th and 5th grade level; however, the SHO noted that the report did not indicate whether or not relator had the intellectual ability to further increase his academic abilities and/or obtain his GED. The SHO further noted that relator had not submitted any evidence which would demonstrate that such academic enhancement was not possible. Finding that there were

a number of light-duty, unskilled jobs that required no greater education level than what relator currently had and because relator had not demonstrated that he lacked the intelligence to improve his academic skills if necessary to obtain other work, the SHO concluded that relator was not entitled to an award of PTD compensation.

{¶ 29} 11. Relator filed a motion for reconsideration which was initially granted by the commission. However, the commission ultimately determined that relator had not met his burden of proving sufficient grounds to justify the exercise of continuing jurisdiction and the order denying his application for PTD compensation was upheld.

{¶ 30} 12. At some point, relator's claim was additionally allowed for the psychological condition of "depressive disorder," and relator indicates that he received a period of TTD compensation beginning June 15, 2013 until September 18, 2014.

{¶ 31} 13. Relator filed his second application for PTD compensation on January 6, 2015. In support of his application, relator submitted the November 19, 2014 report of his treating psychologist Christopher C. Ward, Ph.D., who indicated that relator had been receiving regular psychotherapy but that his improvement had been marginal. Noting that relator's symptoms included depressed mood most of the day, diminished interest in previously enjoyed activities, poor sleep, fatigue, feelings of worthlessness, poor concentration, difficulty making decisions, and occasional suicidal ideations, Dr. Ward noted that relator had become increasingly isolated and that, in his opinion, from a psychological stand point, relator was unable to perform even unskilled sedentary jobs.

{¶ 32} 14. An independent medical evaluation was conducted by Joseph Kearns, D.O. In his February 17, 2015 report, Dr. Kearns identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings upon examination, and concluded that relator's allowed physical conditions had reached MMI, that relator had a 27 percent whole person impairment based on the allowed physical conditions, stating:

> Given his neck surgery and limited motion he would have difficulty performing things above head level or below waist level. He would be limited in the weight he is able to lift, he would be limited in bending and twisting activity. Because of his medications he would be limited in his commercial driving activity. As such he would generally be in a light work category exerting up to 20 pounds of force occasionally and 10 pounds frequently.

{¶ 33} 15. Raymond D. Richetta, Ph.D., examined relator for his allowed psychological condition. In his March 15, 2015 report, Dr. Richetta identified the allowed conditions in relator's claim, reviewed the past medical treatment for both his physical and psychological conditions, and identified the medical records which he reviewed. Dr. Richetta noted that relator's emotional status was mildly depressed. Dr. Richetta also noted there was no evidence of perceptional disturbances and that relator's speech indicated he was able to process information and come to reasonable conclusions but that his cognitive functions were somewhat impaired. Dr. Richetta opined that relator had a class 2 mild impairment with regards to activities of daily living and concentration and that relator had a class 3 moderate impairment with regards to social functioning and adaptation. Dr. Richetta concluded that overall relator had a class 2 mild impairment resulting in a 20 percent whole person impairment due solely to the allowed psychological condition. Dr. Richetta concluded that relator was capable of performing work with further limitation:

> He is able to engage in low-stress work that has a predictable routine. He is unable to work where he would have to rapidly process information or attend to find detail. He would be unable to work with the general public due to discomfort in groups.

{¶ 34} 16. The BWC referred relator to Jennifer J. Stoeckel, Ph.D., for a psychological evaluation. In her September 16, 2014 report, Dr. Stoeckel identified the allowed conditions in relator's claim and discussed the medical records which she reviewed. Ultimately, Dr. Stoeckel opined that relator's allowed psychological condition had reached MMI, that psychologically he would be able to return to his previous employment as a dump truck driver as well as similar employment, and, furthermore, that he would be capable of low stress occupations. Relator reported reduced endurance; however, Dr. Stoeckel noted he was fairly social, related appropriately, and was capable of labor-type positions. Concerning vocational rehabilitation, Dr. Stoeckel noted that relator had previously been found unfeasible for vocational rehabilitation and did not discuss the matter further.

{¶ 35} 17. Relator's PTD application was heard before an SHO on May 12, 2015 and was denied. The SHO relied on the report of Dr. Kearns and concluded that relator

was able to perform work activity within those restrictions. Further, the SHO discussed the psychological reports of Drs. Stoeckel and Richetta, and specifically adopted the conclusions contained in Dr. Richetta's report.

{¶ 36} Thereafter, the SHO noted that relator's age of 49 years was a positive factor in evaluating his re-employment potential. The SHO indicated that relator had a 10th grade education, had been able to obtain a CDL license, and maintain typical truck logs that reported an ability to read, write, and perform basic math but not well. Noting that relator's academic qualifications were limited, the SHO agreed with the determination from the prior hearings indicating that there had not been a showing that relator lacked either the capacity or the time to acquire the basic skills necessary for typical entry-level work. Although noting that relator was not physically able to engage in his former work as a dump truck driver, the SHO concluded that his education and work experience, taken together, would not prevent him from acquiring the basic skills for work within his residual capacities.

{¶ 37} In denying relator's application for PTD compensation, the SHO concluded:

> The independent medical evaluations found the Injured Worker physically capable of engaging in light duty work activities, with some additional restrictions. Psychologically, the Injured Worker does have minor restrictions on his ability to engage in higher stress, or more complex tasks, but typical entry level low stress activities are within his capabilities.
>
> Taking these factors together, an award of permanent total disability compensation is not indicated. Permanent total disability compensation is compensation of last resort, to be awarded only in cases where the Injured Worker has demonstrated that he has lost the entirety of his capacity to engage in sustained remunerative employment, or to obtain the skills to engage in sustained remunerative employment. The Injured Worker's age certainly would not prevent obtaining those skills. He has at least basic academic capabilities. Typical entry level light manufacturing positions which do not require high speed work, or extensive interaction with the public are clearly within the Injured Worker's residual capacities. Other positions, with up to 30 days training, would also not be beyond those capacities. The application to be awarded permanent total disability compensation is denied.

{¶ 38} 18. Relator filed a request for reconsideration which the commission set for hearing.

{¶ 39} 19. The commission heard relator's request for reconsideration on September 22, 2015 and ultimately determined that relator had failed to meet his burden of proving sufficient grounds to justify the exercise of continuing jurisdiction and noted that the SHO's order denying his application for PTD compensation remained in full force and effect.

{¶ 40} 20. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 41} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 42} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 43} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 44} Relator argues that the commission abused its discretion in the manner in which it considered the non-medical disability factors. Specifically, relator asserts the record is clear that he does not have the academic ability or aptitude for re-education or retraining. In fact, relator asserts that there is unrebutted evidence from the vocational rehabilitation evaluator indicating that he did not have the capacity or the ability for

vocational or academic enhancement. Relator also asserts that the commission inaccurately assessed his limitations and that his inability to perform a full range of light-duty employment precludes employment.

{¶ 45} In the present case, the commission relied upon the medical report of Dr. Kearns who evaluated relator for his allowed physical conditions. Dr. Kearns found that relator's allowed physical conditions had reached MMI, assessed a 27 percent whole person impairment, and concluded that he could perform work activity with the following restrictions:

> Given his neck surgery and limited motion he would have difficulty performing things above head level or below waist level. He would be limited in the weight he is able to lift, he would be limited in bending and twisting activity. Because of his medications he would be limited in his commercial driving activity. As such he would generally be in a light work category exerting up to 20 pounds of force occasionally and 10 pounds frequently.

{¶ 46} Ohio Adm.Code 41213-3-34(B)(2)(b) states in part:

> "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

{¶ 47} Dr. Kearns specifically indicated that relator could perform activities exerting up to 20 pounds of force occasionally and 10 pounds of force frequently. Those weight limits fit squarely within the definition of light-duty work. The Ohio Administrative Code provides further that a job is rated as light-duty work (1) when it requires walking or standing to a significant degree, or (2) requires sitting most of the time but entails pushing and/or pulling of arm or leg controls, and/or (3) requires working at a production rate pace entailing the constant pushing and/or pulling of

materials. Relator argues that because Dr. Kearns opined that he would have difficulty performing activities above head level or below waist level and that he would be limited in bending and twisting, it is clear he cannot perform a full range of light-duty work. The magistrate disagrees with relator's assessment.

{¶ 48} It must be remembered that the definitions in the Ohio Administrative Code concerning work levels specifically indicate the highest exertional level which a job can have and still be considered within that category. As such, light-duty work would include any job which is greater than sedentary work but less than medium work (exerting 20 to 50 pounds of force occasionally and/or 10 to 25 pounds of force frequently). Contrary to relator's assertion, there is nothing in the report of Dr. Kearns which would indicate that relator could not perform light-duty work simply because he would have difficulty performing work above shoulder level and below waist level. As such, the magistrate specifically rejects this portion of relator's argument.

{¶ 49} Relator also contends that the commission abused its discretion by finding that "there has not been a showing that the Injured Worker lacks either the capacity or the time to acquire the basic skills necessary for typical entry level work." Relator contends that the vocational evidence is clear: he does not have the capacity to improve his intellectual abilities.

{¶ 50} In making this argument, relator asserts that his sincere best efforts at vocational rehabilitation were not only ignored but were mischaracterized, and the commission's order denying his application for PTD compensation contradicts the closure of his vocational rehabilitation file.

{¶ 51} Before relator's application for PTD compensation was filed, the employer's MCO had closed his vocational rehabilitation file. As indicated previously in the findings of fact, relator had challenged the determination of his employer's MCO to close his file, and in an order mailed January 18, 2012, the BWC upheld the MCO's determination, stating:

> Per the peer review of Jennifer Beale, CRRN of 1/9/2012, she states upon review of the claim documents, it is this reviewer's opinion that the injured worker's file remain closed. The injured worker['s] physician of record (POR) requested a functional capacity exam (FCE). According to the FCE results the injured worker demonstrated light strength

overall with significant difficulty with repetitive or sustained reaching. The evaluator concluded that "the light physical demand capacity combined with the limited reaching ability will make competitive employment challenging for the injured worker." The evaluator noted that he "did not believe the injured worker would be a viable candidate for a vocation within his prior occupation of truck driving due to his limited cervical range or motion and guarded movement." The lack of accessible transferable skills suggested by the evaluator that the injured worker was not feasible for the vocational rehab program. The POR can refer him to the vocation rehab program at a later date, if he is medically stable at that time.

{¶ 52} Approximately three weeks later on February 6, 2012, relator filed his first application for PTD compensation. Thereafter, on March 8, 2012, a DHO affirmed the BWC's decision to close relator's vocational rehabilitation file.

{¶ 53} Relator's first application for PTD compensation was heard before an SHO on November 15, 2012 and was denied based on a finding that relator could perform light-duty work provided he lift no more than five pounds overhead on an occasional basis. After discussing the non-medical disability factors, the commission determined (1) there were unskilled sedentary and light-duty work which relator could perform, (2) there was no evidence that relator could not complete 30 days of training to perform those tasks, and (3) relator had time to obtain further education and retraining for light-duty and sedentary work. As such, it is clear that although the BWC upheld the closure of relator's vocational rehabilitation file, it was noted relator could again be referred for vocational rehabilitation at a later date if medically stable at that time.

{¶ 54} The commission relied on the January 9, 2012 report of Beale who specifically recommended that relator follow-up with his physician of record, that he should perform a home exercise program (designated as an HEP in her report), and that the home exercise program and pain management might assist relator to regain pain relief and allow him to perform at a medium level of work. Beale noted further that this may also allow relator to work in a light-duty position or perform other work and may enable his physician of record to refer him for vocational rehabilitation at a later date.

{¶ 55} Contrary to relator's argument, when the BWC affirmed the closure of his vocational rehabilitation file (after agreeing with Beale that his vocational rehabilitation should remain closed), it was specifically recommended that relator participate in pain

management and a home exercise program so that he could potentially manage his pain better and increase the level of work he was capable of performing.  There is no evidence in the record that relator ever did so.  As such, relator's argument that he has been deemed to not be a good candidate for vocational rehabilitation forever is not accurate. Relator was only 47 years of age in 2012 when his first application for PTD compensation was denied.  Based, at least in part, on a finding that he had not presented sufficient evidence that he was incapable of improving his opportunities, the vocational evidence in 2015 specifically noted that much of relator's difficulties in performing the testing had to do with the amount of pain he was experiencing.  Relator never attempted to improve his physical situation so that he could participate in vocational rehabilitation.  Instead, he filed another application for PTD compensation less than one month later.  The evidence simply does not support relator's argument, and the magistrate finds that the commission did not abuse its discretion in this regard.

{¶ 56} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation, and this court should deny his request for a writ of mandamus.



/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).