[Cite as *State ex rel. Guilfoyle*, 2018-Ohio-2412.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Dolores J. Guilfoyle, | : | |
| Relator, | : | |
| v. | : | No. 17AP-408 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Big Lots, Inc., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 21, 2018

*Becker & Cade,* and *Dennis A. Becker,* for relator.

*Ice Miller LLP, William J. Barath* and *Jennifer M. McDaniel,* for respondent Big Lots, Inc.

*Michael DeWine,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1} Dolores J. Guilfoyle filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant her application for permanent total disability ("PTD") compensation. Failing that, she requests that the order denying her PTD compensation be vacated and the commission be compelled to conduct additional proceedings.

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision,

appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3} Counsel for Guilfoyle has filed objections to the magistrate's decision. Counsel for her former employer, Big Lots, Inc. ("Big Lots"), has filed a memorandum in response. Counsel for the commission has filed a similar memorandum. The case is now before the court for a full, independent review.

{¶ 4} Guilfoyle suffered two sets of injuries while employed by Big Lots. In April 2001, she suffered a set of injuries to her right shoulder according to the complaint she filed in mandamus. In May 2005, she suffered injuries to her neck, including a variety of injuries at the C-5, C-6 and C-7 levels.

{¶ 5} The magistrate's decision indicates that the 2001 injuries were actually injuries to Guilfoyle's lower back, specifically being recognized as lumbar sprain/strain and lumbar radiculitis, left.

{¶ 6} Guilfoyle left her employment with Big Lots because she felt she was no longer physically capable of performing her work there. She spent six months working as a nail technician, but quit that job because she felt she was aggravating her problems with her cervical spine.

{¶ 7} Guilfoyle applied for and received temporary total disability ("TTD") compensation for a period of time but the TTD compensation ended following a finding that she had reached maximum medical improvement ("MMI").

{¶ 8} In April 2015, she was awarded permanent partial disability of 25 percent.

{¶ 9} In June 2016, she applied for PTD compensation. She was then 62 years of age.

{¶ 10} Guilfoyle's treating chiropractor provided a report indicating that, in his view, she was entitled to PTD compensation.

{¶ 11} Guilfoyle was independently examined by Gary L. Ray, M.D., who also reported that she was entitled to PTD compensation. This conflicted with a report from Richard E. Deerhake, M.D. who felt that Guilfoyle could return to her former position as a manager with Big Lots provided that she worked under restrictions against lifting greater than ten pounds and was not required to frequently bend or twist.

{¶ 12} Guilfoyle's application for PTD compensation was heard before a staff hearing officer ("SHO") in January 2017. The confusion about what conditions had been recognized as a result of the April 2001 injuries apparently continued. The SHO denied PTD compensation based on the independent finding that Guilfoyle had abandoned the workforce. The issue of her alleged abandoning of the workplace is front and center in this mandamus action, but frankly should not be, as explained below.

{¶ 13} The SHO had before him/her two medical reports which claimed that Guilfoyle was incapable of sustained remunerative employment due to her earlier injuries. If either of these reports were believable, then she could not be said to have abandoned a workforce she was incapable of rejoining. The SHO needed to address the merits and believability of all the medical reports before skipping ahead to the abandonment issue.

{¶ 14} The issue of entitlement to TTD compensation is a totally separate issue. A claimant has her TTD compensation stop when she is adjudicated to reach a medical plateau called MMI. The stability can be the result of a new ability to return to work or can be stability in a range where sustained remunerative employment is impossible. TTD compensation issues and PTD issues are separate and distinct.

{¶ 15} Guilfoyle was being told by her treating chiropractor that she was no longer capable of sustained remunerative employment. She should not be deemed to have abandoned the workforce when her treating medical professional tells her she cannot work. The fact that a medical professional hired to provide a report for her self-insured employer reports otherwise, does not change the factors to be considered.

{¶ 16} The record before us indicates that Guilfoyle temporarily wanted to delay her return to the workforce so she could care for her husband who was dying. A temporary delay in returning to sustained remunerative employment is not the same as abandoning the workforce.

{¶ 17} In short, this case needs to be returned to the commission, both to straighten up the mess about what conditions were recognized when and also to adjudicate whether or not Delores Guilfoyle is capable of sustained remunerative employment free from the allegation that she abandoned the workforce.

{¶ 18} We sustain the objections to the magistrate's decision. We adopt the findings of fact in the magistrate's decision as supplemented and restricted above. We reject the

conclusions of law in the magistrate's decision with respect to the abandonment issues. We vacate the denial of the application for PTD compensation and remand the case to the commission for further appropriate consideration of the merits of the application for PTD compensation.

*Objections sustained; case remanded.*

BRUNNER, J., concurs.
BROWN, P.J., dissents.

BROWN, P.J., dissenting.

{¶ 19} After an independent review of the record, pursuant to Civ.R. 53, and due consideration of relator's objections, I would overrule the objections and adopt the magistrate's findings of fact and conclusions of law.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Dolores J. Guilfoyle, | : | |
| Relator, | : | |
| v. | : | No. 17AP-408 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Big Lots, Inc., | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on January 23, 2018

*Becker & Cade,* and *Dennis A. Becker,* for relator.

*Ice Miller LLP, William J. Barath* and *Jennifer M. McDaniel,* for respondent Big Lots, Inc.

*Michael DeWine,* Attorney General, and *Nathan P. Franzen,* for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 20} Relator, Dolores J. Guilfoyle, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to either grant her request for permanent total disability ("PTD") compensation or exercise its continuing jurisdiction and rehear the matter.

Findings of Fact:

{¶ 21} 1. Relator has sustained two work-related injuries during the course of her employment with Big Lots, Inc. The first occurred on April 19, 2001 and her workers' compensation claim is allowed for: "lumbar sprain/strain; lumbar radiculitis, left."

{¶ 22} 2. The second injury occurred on May 12, 2005 and is allowed for: "Cervical strain; protruding disc C3-4; disc protrusion at C5-6 and C6-7; stenosis C5-6; stenosis C6-7 and radiculopathy C6-7."

{¶ 23} 3. According to relator's brief, she worked for Big Lots from 1985 until December 5, 2006. Initially, relator worked as a floor clerk and her duties included unloading trucks, pricing stock merchandise, preparing displays, and waiting on customers. Her final position was a store manager in charge of merchandising and overseeing store operations.

{¶ 24} 4. Relator left Big Lots because she was no longer able to physically perform her job duties. She attended school, trained to work as a nail technician, and worked in a nail salon from May through November 2007. Relator left that job because the requirement of holding her arms in an elevated position aggravated the allowed conditions in her cervical spine. Thereafter, relator worked as a sales clerk at Party City from February 2008 through April 28, 2011.

{¶ 25} 5. On July 1, 2011, relator filed a motion seeking the payment of temporary total disability ("TTD") compensation beginning April 28, 2011, the day she last worked as a sales clerk for Party City.

{¶ 26} 6. Due to a worsening of her cervical spine, relator underwent surgery on April 26, 2012. The following procedures were performed:

> Anterior cervical discectomy C5-6, C6-7, microsurgical dissection, interbody arthrodesis with decompression autograft, Excel demineralized bone matrix, and Stryker PEEK cages C5-6 and C6-7, anterior cervical instrumentation, aviator plate C5-C7.

{¶ 27} 7. TTD compensation was paid following surgery until TTD was terminated based on a finding that her allowed conditions had reached maximum medical improvement ("MMI") effective April 22, 2014.

{¶ 28} 8. In April 2015, relator was found to have a 25 percent permanent partial disability.

{¶ 29} 9. Relator filed her application for PTD compensation on June 2, 2016. At the time, relator was 62 years of age and noted the following on her application: used a TENS unit daily, had lifting limitations of 10 pounds, was able to drive a vehicle for up to 1 hour at a time, could stand for 20 minutes at a time and sit for 15 minutes at a time, and was sleeping approximately 6 hours a night. Relator also noted that she began receiving Social Security Disability Benefits in September 2012. Further, relator graduated from high school, could read, write, and perform basic math, and noted her employment as indicated previously.

{¶ 30} 10. Relator's application was supported by the March 25, 2016 report of her treating chiropractor, Raymond E. Stricker, III, D.C. In his report, Dr. Stricker identified the allowed conditions in relator's claim, provided his physical findings on examination, noted her complaints and his ongoing treatment plan, and concluded that relator has permanent disabilities due to her allowed conditions which rendered her incapable of engaging in any sustained remunerative activities at this time.

{¶ 31} 11. Relator was also examined by Richard E. Deerhake, M.D. In his July 25, 2016 report, Dr. Deerhake identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings on examination, and noted that, in his opinion, relator could return to her former work activity with restrictions of not lifting greater than ten pounds and no frequent bending or twisting.

{¶ 32} 12. Relator was also examined by Gary L. Ray, M.D. In his September 21, 2016 report, Dr. Ray identified the allowed conditions in relator's claim, identified the medical records which he reviewed, provided his physical findings on examination, opined that she had reached MMI, determined that she had a 32 percent whole person impairment, and concluded that due to the considerable structural abnormalities of her cervical spine which resulted in radiculopathy, numbness, and weakness, she was incapable of work.

{¶ 33} 13. Relator's application was heard before a staff hearing officer ("SHO") on January 5, 2017. It is undisputed that the SHO failed to identify the correct allowed conditions of lumbar sprain/strain and lumbar radiculitis, left; however, when reading through the order, it is apparent that the SHO was aware of and properly considered the actual allowed conditions in that claim. The SHO relied on the medical report of Dr.

Deerhake to conclude that relator was capable of performing sedentary work activities. Thereafter, the SHO determined that relator's age was a negative vocational factor. Her education was found to be a positive factor because, as a high school graduate, she could perform semi-skilled through skilled work, had the intellectual ability to learn new work rules, policies, and procedures, and to undergo short-term on-the-job training. With regard to her work history, the SHO also found that to be a positive vocational factor noting that she was ultimately promoted to store manager where she oversaw store operations, priced and stocked merchandise, prepared displays, and supervised employees.

{¶ 34} Thereafter, the SHO found that relator had abandoned the workforce since 2014 when her allowed conditions were found to have reached MMI. The SHO specifically stated:

> The Hearing Officer finds that the Injured Worker abandoned the workforce in that she has made no attempt to return to work since 2014 despite medical evidence establishing that she retained the functional capacity to perform sedentary work activity. The Hearing Officer finds that the Injured Worker's failure to pursue any type of re-employment does not support her application.
>
> Based upon the Injured Worker's ability to return to sedentary work activity, her education level and work history, and her failure to pursue any type of re-employment since 2014, the Hearing Officer orders that the Application be denied. The Hearing Officer finds that the Injured Worker is able to perform the duties of sustained remunerative employment.

{¶ 35} 14. Relator's request for reconsideration was denied by order of the commission mailed March 9, 2017.

{¶ 36} 15. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*,

26 Ohio St.3d 76 (1986).  On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 38} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment.  *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994).  Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors.  *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).  Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability.  *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994).  The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision.  *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 39} In this mandamus action, relator first asserts that the commission abused its discretion when it denied her request for reconsideration.  In her brief, relator argues the SHO's misidentification of the conditions in her 2001 claim is evidence of a clear mistake of fact which renders the order defective.  The magistrate disagrees with relator's assertion.

{¶ 40} As noted in the findings of fact, the SHO's order did improperly identify the allowed conditions in relator's 2001 claim.  This was likely a result of the SHO mistyping by one number, the claim number in the 2001 claim.  However, as also noted in the findings of fact, the SHO did not discuss the misidentified conditions; instead, the SHO properly discussed the actual allowed conditions in the 2001 claim and their impact on relator's ability to perform some sustained remunerative employment.  Given that there is no error that actually occurred as a result of this misidentification, the magistrate finds that this argument should be rejected.

{¶ 41} Relator's next argument is that the commission abused its discretion when it relied on a medical report prepared more than two years from the date of her application for PTD compensation.  In the order denying her request for PTD compensation, the SHO

did discuss the February 20, 2014 report of David Halley, M.D., who had found that relator had reached MMI. That paragraph states:

> The Injured Worker was found to have reached maximum medical improvement by the Industrial Commission in April of 2014, based upon a medical report from David Halley, M.D., dated 02/20/2014. In that report, Dr. Halley indicated that the Injured Worker was able to return to work activity at a sedentary level. The Injured Worker has not made any attempts to return to work or re-enter the workforce since that finding of maximum medical improvement. The Injured Worker testified at hearing that her husband was sick during that time period and she was responsible for providing total care for him. After his death, she testified that she did not return to work in any capacity and did not make any efforts to look for work.

{¶ 42} The SHO used the date of Dr. Halley's report as evidence that, at that time, according to Dr. Halley, relator was capable of returning to work activity with work restrictions, but failed to do so. The SHO never indicated that Dr. Halley's report was being relied on to support a finding that she could currently perform employment; instead, it was used as evidence that, in 2014, she was capable of working within certain physical restrictions, but failed to do so. The SHO did not improperly consider Dr. Halley's report.

{¶ 43} Lastly, relator argues that the SHO improperly found she had abandoned the workforce when her evidence clearly demonstrated that she left her employment at Big Lots, as a nail technician, and at Party City due to the allowed conditions in her claim. Relator argues that, because it is clear she did not return to work after she left the employment at Party City in 2011 due to pain from the allowed conditions, she could not be found to have voluntarily abandoned the workforce. The legal argument that relator makes (the absence from the workforce is involuntary because it is related to the allowed conditions in the claim) is a correct statement of the law. However, in the present case, the commission found: (1) relator was capable of performing work within restrictions in 2011 when her allowed conditions were found to have reached MMI; (2) relator did not return to work at that time nor did she search for work; (3) relator specifically testified "that her husband was sick during that time period and she was responsible for providing total care for him. After his death, she testified that she did not return to work in any capacity and did not make any efforts to look for work"; and (4) relator was currently capable of

performing work within the restrictions of Dr. Deerhake and consideration of the non-medical disability factors.

{¶ 44} Although relator argues she did not return to work after the finding that her allowed conditions had reached MMI in April 2011 because the allowed conditions prevented her from performing any work activities, the medical report from Dr. Halley, on which the commission relied to find that she had reached MMI at that time, indicated she was capable of performing work activity with restrictions. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *Teece.* Further, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's. *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996). Here, there is some evidence in the record that, at the time she stopped working, relator was capable of performing work activity. As such, the commission's finding that she abandoned the workforce at that time when she did not look for other work or pursue vocational activities does not constitute an abuse of discretion and is a valid additional reason for denying her application for PTD compensation.

{¶ 45} Based on the foregoing, it is this magistrate's decision that the commission did not abuse its discretion when it found that relator was not permanently and totally disabled and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).